In the Matter of 440 EAST 102ND STREET CORPORATION, Appellant, against HARRIS H. MURDOCK et al., Constituting the Board of Standards and Appeals of the City of New York, Respondents.

Argued March 5, 1941, decided April 24, 1941.

*Frederick E. Crane, Leonard Acker* and *Edgar A. Palmieri* for appellant.

*William C. Chanler,* Corporation Counsel (*James Hall Prothero, Paxton Blair* and *Jeremiah M. Evarts* of counsel), for respondents.

RIPPEY, J. On and prior to March 13, 1935, the petitioner-appellant owned property facing about 218 feet on East One Hundred and Second street in the borough of Manhattan and bounded on the east by the Harlem river. Four buildings were located generally on the outside boundaries of the plot and on the interior, between the buildings, was an open space. The property was used for more than thirty years for stabling horses, at times as many as seventy-five, and for a junk and stable yard. On March 13, 1935, title to the easterly portion of the property, on which two of the buildings and a small portion of the open yard were located, vested in the city of New York by virtue of condemnation proceedings in connection with the proposed construction of the East River drive. Thereupon the buildings on the property condemned were demolished.

After the condemnation proceedings, there remained on the westerly side of the plot a lot facing 105.14 feet on East One Hundred and Second street, running back 125.91 feet on the westerly line at right angles to East One Hundred and Second street, thence easterly at right angles to the said westerly boundary line to the westerly condemnation line of East River drive and thence along such condemnation line to the southerly lot line of East One Hundred and Second street, comprising some 12,550 square feet of space. The building located on the northeast corner of the plot was in part destroyed by fire in 1938 and what remained was ordered demolished by the city authorities. Still remaining on the northwest corner of the plot was a

one-story brick building, 48.7 feet wide and 59.7 feet deep, which had been used continuously from 1900 at least as a stable for more than five horses, and also most of the junk yard and stable storage and accessory space which had been so used for a similar period of time.

Petitioner applied to the Department of Housing and Buildings in May, 1939, for permission to change the use of the premises not theretofore taken by the city in condemnation proceedings to a gasoline service station and such permission was granted on July 18, 1939. Permits for lowering the curb on One Hundred and Second street and for storing gasoline were subsequently issued. The one-story brick building remained on the property unchanged structurally or in any other particular except that a coat of stucco was plastered over the exterior walls. Outside of the building, the surface of the rest of the plot was cemented, six 550-gallon tanks were placed beneath the surface of the ground, six gasoline pumps were installed, and stucco was put on the brick wall on the southerly side of the property. A certificate of occupancy was issued by the city authorities and appellant has been using the property as a gasoline service station since late in 1939.

Prior to December 7, 1934, all of the property of appellant was in an unrestricted district. On that date an amendment to the "Amended Building Zone Resolution" went into effect whereby the portion of the plot to which it still has title was rezoned and placed in a residential district but a strip five feet wide along the westerly lot line was left in the unrestricted district. Since that amendment went into effect, the Amended Building Zone Resolution makes uses of the plot, so far as it was rezoned into a residence district, either for a gasoline service station or for a stable for more than five horses or for a junk and storage yard non-conforming uses. No application has been made by the owner for a variance. The question presented is whether, without a variance of the Amended Building Zone Resolution, the building and premises west of East River drive and now owned by appellant and included in the residential district

may be used under the terms of the resolution for a gasoline service station. It is not open to question that the part of the plot still located in the unrestricted district may be used for a gasoline service station unless its use is restricted or prohibited by some provision of law or regulation not on the record here open for consideration and that the entire plot, embracing both that part located within a residence district and that part located within an unrestricted district, is used as a single unit.

The question of the constitutionality of the Amended Building Zone Resolution as applied to the property of petitioner-appellant is not before us and, consequently, we do not consider its reasonableness or arbitrary character in such application. Some aspect of the police power furnishes the basis for the imposition of reasonable restrictions by State and municipalities through zoning ordinances and regulations uniformly applicable within a given area affecting the uses to which private property located within that area may be put by its owners but its exercise finds justification only in promotion of public health, public safety, public welfare and good order to the end that public convenience and general prosperity may be attained (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221; *Baddour* v. *City of Long Beach*, 279 N. Y. 167; *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365). Zoning laws which curtail and limit uses of property confer no privilege upon property owners. Even though in case of necessity such laws are properly within the exercise of the police power, the whole and each and every of the parts must be given a strict construction since they are in derogation of common-law rights (*People ex rel. Ortenberg* v. *Bales*, 224 App. Div. 87; affd., 250 N. Y. 598; *Matter of Multiplex Garages, Inc.*, v. *Walsh*, 241 N. Y. 527; *Wood* v. *Tunnicliff*, 74 N. Y. 38, 43; *Woollcott* v. *Schubert*, 217 N. Y. 212, 220). The provisions of the resolution may not be extended by implication (*Matter of Monument Garage Corp.* v. *Levy*, 266 N. Y. 339). It was a strict legal right of appellant to continue the non-conforming uses existing at the

effective date of the amendment to the Amended Building Zone Resolution in 1934 since the property was at that time wholly within an unrestricted district for which no regulations or restrictions were provided (Amended Building Zone Resolution, § 5; *Village of Mill Neck* v. *Nolan*, 259 N. Y. 596). Appellant, however, acquired no " vested rights " by virtue of the permits and certificate of occupancy upon which it may here rely since applications for the permits and certificate were made and granted later than the effective date of the amendment (*Matter of Rosenbush* v. *Keller*, 247 App. Div. 748; affd., 271 N. Y. 282.)

Section 1 of the Amended Building Zone Resolution provides that the word " building " shall include the word " structure." The city of New York is divided into four classes of districts by section 2 " for the purpose of regulating and restricting the location of trades and industries and the location of buildings designed for specified uses " to be known as (1) residence districts, (2) business districts, (3) retail districts, and (4) unrestricted districts. That section further provides that " no building or premises shall be erected or used for any purpose other than a purpose permitted in the use district in which such building or premises is located." Section 3 specifies eight uses for which a building may be erected or a building or premises used in a residence district. A gasoline service station is not one of the permitted uses. Subdivision (1) specifies " dwellings, which shall include dwellings for one or more families and boarding houses and also hotels which have thirty or more sleeping rooms " and " the accessory uses customarily incident thereto." Section 4 (subd. a) prohibits, among other trades, industries or uses, the use of any building or premises and the erection of any building which is arranged, intended or designed to be used in a business district for "(20) Junk, scrap paper or rag storage * * * (36) Stable for more than five horses " and " (46) Gasoline service station." Subdivision (b) prohibits a use which is " noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise," except car barns and places of amusement.

Petitioner's use of its building and premises for a gasoline service station has not been prohibited on the ground that it was noxious or offensive for the reasons specified in subdivision (b) nor for any other similar reason and subdivision (c) has no bearing on any question here involved.

Saving provisions as to non-conforming uses and exceptions are contained in sections 6 and 7 respectively but attention need be given only to section 6. Section 6 reads as follows:

" 6. *Existing Buildings and Premises.* (a) Any use existing in any building or premises on July 25, 1916, and not conforming to the regulations of the use district in which it is maintained, may be continued therein. No then existing building designed, arranged, intended or devoted to a use not permitted by this article in the district in which such use is located shall be enlarged, extended, reconstructed or structurally altered unless such use is changed to a use permitted in the district in which such building is located. Such building may, however, be reconstructed or structurally altered to an extent not greater than 50 per cent. of the value of the building, exclusive of foundations, provided that no use in such building is changed or extended, except as authorized in paragraph b of this section, and provided, further, that no use included in any one of the enumerated subdivisions of paragraph a of section 4 is changed into a use included in any other enumerated subdivision of paragraph a of section 4 or into a use prohibited by paragraph b of section 4, and also provided that no use prohibited by paragraph b of section 4 is changed into another use prohibited by paragraph b of section 4 or into a use included in an enumerated subdivision of paragraph a of section 4.

" (b) Any use existing in any building or premises on July 25, 1916, and not conforming to the regulations of the use district in which it is maintained may be changed, and such use may be extended throughout the building, provided that in either case:.

" (1) No structural alterations shall be made in the building, except as authorized by paragraph a of this section, and

" (2) In a residence district no portion of a building devoted to a use included in subdivision 1 of section 3 shall be changed to any use prohibited in a residence district, and

" (3) In a residence district no building or premises, unless devoted to one of the uses that is by section 4 prohibited in a business district, shall be changed to any of such uses, and

" (4) In a residence or business district no building or part thereof and no premises, unless devoted to one of the uses that is by paragraph a or b of section 4 prohibited in a business district, shall be changed to any of such uses.

" If a use is changed as authorized in this section, the new use may thereafter be changed, subject to the limitations imposed by subdivisions 1, 2, 3, and 4 of this paragraph."

Section 6 (subd. a) relates to the continuance of the use to which the premises and the buildings and structures thereon were put by the owner before and at the time of rezoning of the property into a district in which such uses were prohibited. It is specifically provided that the uses to which the premises and buildings thereon were put by the owner on and prior to that date may be continued despite the rezoning and the existence of the property in whole or in part in the residence district. It is next provided that *no then existing building* on the premises suitably designed, arranged, included or devoted to such uses may " be enlarged, extended, reconstructed or structurally altered unless such use is changed to a use permitted in the district in which such building is located," in this case, to a use permitted in a residence district, *except*, if the pre-existing use is changed or extended as authorized by section 6 (subd. b), " *such building* may, however, be reconstructed or structurally altered to an extent not greater than 50 per cent. of the value of the building, exclusive of foundations." Specifically in the case at bar that means that the owner of the property, when changing the stable for more than five horses and junk yard use to which the property was devoted on and prior to December 7, 1934, to use for a gasoline service

station, the *then existing building might be reconstructed or structurally altered* to an extent not greater than fifty per cent of the value of that building, exclusive of foundations. We have already held that several structures on the same plot, although used for the same purpose, may not be grouped together as one unit for the purpose of effecting a prohibited use of the premises (*Matter of Multiplex Garages, Inc.*, v. *Walsh*, 241 N. Y. 527). Thus, under section 6 (subd. a) we are to consider only whether, as matter of law, the building on the premises was reconstructed or structurally altered. We would not be required to give even that further consideration except for the limitation provided in section 6 (subd. b, par. 1) on the change of the non-conforming use. The provisos in section 6 (subd. a) of the resolution need no additional consideration here since they are applicable only in the event that there is reconstruction or structural alteration of the building.

Appellant, on this record, does not seek to continue the non-conforming uses of the building for more than five horses or for junk, etc., specified in section 4, subdivision a (par. 20) and (par. 36) as permitted in section 6 (subd. a). Nor was the then existing building " enlarged, extended, reconstructed or structurally altered." It has been found in the courts below as a fact upon ample and non-conflicting evidence that nothing was done to the building proper except to cover the outside brick walls with a coat of stucco. Nothing of more consequence was done than would have resulted from a coat of paint. Nothing was done to the structure as such. That was the only building or structure on the premises except the brick wall in the rear and the only treatment it received was a coat of stucco. A building is " enlarged, extended, reconstructed or structurally altered " within the meaning of a zoning resolution only where there is a change or substitution in a substantial particular in the structure of the building itself or in one of its parts or by the addition of another structure to it so that there is an effective conversion of an existing building into a different structure (*Klumpp* v. *Rhoads*, 362 Ill. 412; *Paye* v. *City of*

*Grosse Point*, 279 Mich. 254; *Commonwealth* v. *Hayden*, 211 Mass. 296; *City of Earle* v. *Shackleford*, 177 Ark. 291; *Carrithers & Son* v. *City of Louisville*, 250 Ky. 462; *Plaza Amusement Co.* v. *Rothenberg*, 159 Miss. 800). By common use and understanding, accord is found in such a definition. Barren land is not a " building " or a " structure " within the purview of the Amended Building Zone Resolution. Accord is also found in the construction which those having to do with the administration of the resolution throughout its history of more than twenty-four years have uniformly given to section 6 to which the courts must extend great and many times controlling weight (*Easton* v. *Pickersgill*, 55 N. Y. 310; *City of New York* v. *N. Y. City Ry. Co.*, 193 N. Y. 543; *Kings Co. L. Co.* v. *City of New York*, 176 App. Div. 175; affd., 221 N. Y. 500; *Town of Amherst* v. *County of Erie*, 260 N. Y. 361, 369, 370; *Paye* v. *City of Grosse Point*, *supra*). Doubt, if any, is dissipated as to the meaning of the words and expressions which we have assigned to them by the definition of an " alteration " which respondent has formulated in article 2 of its Building Code (Administrative Code of the City of New York, L. 1937, ch. 929, § C26–11.0, p. 504) where it is enacted that " the term ' alteration,' as applied to a building or structure, shall mean any change or rearrangement in the structural parts or existing facilities of any such building or structure, or any enlargement thereof, whether by extension on any side or by any increase in height, or the moving of such building or structure from one location or position to another " (*Bull* v. *N. Y. City Ry. Co.*, 192 N. Y. 361, 372). " We are bound, of course, in interpreting a statute, to construe it in view of other statutes relating to the same subject-matter, in accordance with the sense of its terms and the intention of the framers of the law " (*Town of Putnam Valley* v. *Slutzky*, 283 N. Y. 334, 343).

Section 6 (subd. b) authorizes, under specified conditions and limitations, a change by a property owner from a non-conforming use to another non-conforming use both of the building on the premises and of the premises themselves.

Since (1) " no structural alterations shall be made in the building, except as authorized by paragraph a of this section," (2) the building on the premises was not devoted to a dwelling use as specified in subdivision 1 of section 3, (3) the building and premises were devoted to uses prohibited in a business district, and (4) the building wholly and in part and the premises wholly were devoted to a use or uses prohibited in a business district in section 4 (subd. a), by the words expressly used, section 6 (subd. b) specifically authorized a change of use in either or both of the building and premises from a stable for more than five horses and accessories and a junk yard, which existed on July 25, 1916, when it had not been abandoned and was non-conforming to the regulations of the use district in 1939, to a gasoline service station, another non-conforming use in 1939, and the extension thereof throughout the building. Sight must not be lost of the fact that section 6 (subd. b, par. 1) relates to *structural changes in the building* only whereas section 6 (subd. b, par. 3) and (par. 4) relate *to use and changes of uses* in either building *or* premises. There is clear distinction in the resolution between changes made in the building structure and uses made of the building and premises. There is likewise necessarily clear distinction between structural changes to the building and addition of structures to the premises or plot. Structural changes to the existing building proper referred to in section 6 (subd. b, par. 1) are permitted and limited by the provisions of section 6 (subd. a). No prohibitions are found in the resolution of additions of structures to the *premises* or plot outside of the existing building necessary to make effective the newly selected non-conforming use.

There could be no abandonment by the owner of the old non-conforming uses through the taking of a part of the premises by the city and the demolition of the buildings thereon or by the injury to and subsequent demolition of another building on account of fire. Neither occurred through the voluntary act of the owner. Further than that, it was found as a fact by the Board of Standards and

Appeals that " the use of the plot as stables and open space for more than five horses and for storage of wagons antedated the adoption of the Zoning Resolution [1916] as well as the change of zone [1934] and was a continuing non-conforming use until after a permit was obtained from the Borough Superintendent for the change of use to a gasoline station." This finding was made upon ample evidence to sustain it and was approved by Special Term and by the Appellate Division. There was no evidence upon which any contrary finding could be based. Thus the contention of the city that the non-conforming use was abandoned through the demolition of buildings on the premises or by affirmative action of the owner has been effectively determined both as a matter of law and fact against the city.

It was found by the Appellate Division that the transformation of the property into a modern gasoline service station in 1939, the placing of six 550-gallon tanks under the surface of the plot, the erection in the open space on the plot of six gasoline pumps in three separate batteries, the cementing and paving of the open area, the curb cuts and the stuccoing of the outside walls of the building and of the rear brick wall involved structural alterations of the building as well as of the whole premises. We have pointed out that such changes did not constitute structural alterations of the building.

There having been no abandonment of the uses to which the property had been put by the owner and section 6 (subd. b) having authorized the substitution of another non-conforming use without restriction or prohibition except as and to the extent above indicated, the owner could not be denied the right to erect on the premises additional structures designed and necessary for the conduct of the business intended in the new use.

Reliance has been placed by counsel for respondent and by the Board of Standards and Appeals on our decisions in *Matter of Kaltenbach* v. *Board of Standards & Appeals* (274 N. Y. 34) and *Matter of Fortuna* v. *Murdock* (281 N. Y. 763). The Appellate Division believed the *Kalten-*

*bach* case was in point but correctly pointed out that the *Fortuna* case was not decisive. Each case depended on its own peculiar facts and neither is controlling on the facts in the case at bar. In the *Kaltenbach* case a plot which was used and occupied as a whole long prior to 1916 as a monument and stone-cutting establishment was sought to be split up into parts on one of which the pre-existing non-conforming use was to be continued. The owner applied to the Commissioner of Buildings for a permit to change the other part from its former use to a gasoline service station. The permit was granted and a certificate of occupancy was issued. Thereupon the owner applied for a permit to erect *an office building and a four-car garage.* That application was approved and a certificate of occupancy granted. When the matter reached the Court of Appeals, we stated that " the issue of law is presented whether the addition of the gasoline service station, the ' office building ' and the four-car garage to these premises constitutes such a change from one non-conforming use to another non-conforming use on the same premises as is authorized by the following provisions of the Building Zone Resolution " (referring to sections 4 [subd. a] and 6 [subd. b]) (p. 37). It was there held, on the record, that the erection of the garage, pumps tanks and office building constituting a single structural unit — a gasoline station — when on a plot under a single ownership with a non-conforming use continued on a part, was in violation of the terms of the Building Zone Resolution. What actually occurred was the continuance of one non-conforming use on a part of the plot, which was permissible only under section 6 (subd. a), and the addition of another non-conforming use on another part of the same plot under the same ownership, which was excluded by section 6 (subd. a) and was authorized only under section 6 (subd. b) in the event that it was permissible under section 6 (subd. b, par. 1) and the old non-conforming use on the plot was discontinued. There was no change of one non-conforming use for another within the meaning of section 6 (subd. b) of the resolution. No principle or rule of law was there laid

down which has any application in the case at bar. In the *Fortuna* case it was sought totally to demolish a stable and on the plot construct a building as an accessory to a gasoline station. The only issue raised or determined was whether the owner was entitled to a variance of the Zoning Resolution. In reviewing the order of the Special Term which has sustained the Board of Standards and Appeals in granting the variance, the Appellate Division held: " The board of standards and appeals exceeded its jurisdiction when it granted the variance described. There was no proof before the board and none appears in this record justifying the conclusion as to the premises involved that there are either ' practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of ' the Amended Building Zone Resolution (New York Code of Ordinances, Appendix B) as it affected those premises, within the purview of section 21 thereof, as judicially construed " (257 App. Div. 993, 994), and upon that holding this court affirmed.

In view of what has been said, appellant was not required to apply for an exception under section 7 of the resolution or a variance of the zoning regulations under section 21 in order to obtain the right to use the premises as a gasoline service station.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur; LEHMAN, Ch. J., and DESMOND, J., dissent.

Ordered accordingly.