ZONING BOARD OF ADJUSTMENT OF
The CITY OF SAN ANTONIO, Texas,
Appellant,

v.

Dr. W. A. LAWRENCE, Appellee.

No. 15870.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 24, 1958.

Rehearing Denied Feb. 21, 1958.

Carlos C. Cadena, City Atty., and A. W. Worthy, Jr., First Asst. City Atty., San Antonio, for appellant.

Levey & Goldstein and Jay Sam Levey, San Antonio, for appellee.

BOYD, Justice.

Appellee Dr. W. A. Lawrence secured a decree directing the Zoning Board of Adjustment of the City of San Antonio to order the Building Inspector of the City to issue to appellee an occupancy permit for for a veterinary clinic in a building on the premises known as 124 St. Cloud Road, the land in question being partly in a "B"

residence zone and partly in a "G" local retail zone, in neither of which is a veterinary clinic permitted under the terms of the applicable zoning ordinance. From this judgment the Zoning Board has appealed.

It is appellee's contention that the operation of a veterinary clinic in a certain building on the premises in question is a nonconforming use protected by law and the ordinance because the land and buildings were so used at the time of the enactment of the ordinance and at the time the land was annexed to the City. It is appellant Board's contention that while appellee had a right to such nonconforming use of the land and the buildings as they existed when annexed to the City, he is not entitled to an occupancy permit for the building in question because it claims appellee reconstructed two buildings carrying the nonconforming rights into a new building which is not so protected, and in which the operation of a veterinary clinic is prohibited by the ordinance.

Pertinent provisions of the ordinance are as follows:

" 'The lawful use of land existing on November 3, 1938, although such use does not conform to the provisions of this chapter may be continued, but if such nonconforming use is discontinued, any future use of such premises shall be in conformity with the provisions of this chapter.

" 'The lawful use of any building existing on November 3, 1938, may be continued although such use does not conform to the provisions of this chapter, and such use may be extended throughout the building, provided no structural alternations, except those required by law or ordinances, are made therein. If no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or more restricted classification.' "

Other provisions of the ordinance empowered the Board to decide appeals from decisions of administrative officials in the enforcement of the ordinance; to decide exceptions to its terms, and to authorize such variances from the terms of the ordinance where their literal enforcement would result in unnecessary hardship. The erection or use of a building, except as is permitted by the ordinance, is prohibited; and the erection or use of any building is prohibited until a certificate of occupancy and compliance with the ordinance is issued by the building inspector.

The zoning ordinance became effective on November 3, 1938. Appellee purchased the property in question on July 7, 1938. It was annexed to the City on May 13, 1940. Appellee bought the property for the purpose of operating thereon a veterinary hospital and small animal clinic. He so used it from the date of the purchase to the date of the trial. Such use of the property had been made for several years prior to appellee's purchase.

Trial was to the court, and findings of fact and conclusions of law were made and filed. It was found that (1) appellee used the entire tract of land and all buildings thereon as a veterinary clinic and for the practice of his profession as a doctor of veterinary medicine; the main portion of the clinic was originally located at the southwest corner of the tract; (2) on May 21, 1956, appellee began a rearrangement of the buildings by joining together two buildings, both of which were then being used as a part of the clinic and had been so used prior to the annexation of the tract by the City and prior to the enactment of the zoning ordinance; one building remained at its original location and the other was moved about 150 feet; (3) "The cost of joining the two buildings was approximately Fifteen Thousand Dollars ($15,000.00), most of which covered improvements on the inside of the buildings, such as flooring, sound-proofing the walls, etc."; (4) a permit was taken out by the building mover on May 31, 1956, for " 'Repairs and Remodeling Incident to Joining Two Houses Together; Buildings to be made to comply with Building Code' "; appellee did not

have knowledge of the contents of the building permit; (5) on October 3, 1956, the building inspector requested appellee to take out an additional permit to cover cost of repairs, at which time the building inspector knew that appellee intended to use the remodeled building as his main veterinary clinic; (6) on December 10, 1956, appellee applied for an occupancy permit so that he could use the building to conduct his profession as a veterinarian and to maintain therein a small animal clinic; the permit was denied by the building inspector on the ground that a veterinary hospital may be operated only in an "L" First Manufacturing District; upon appeal, the Board upheld the action of the building inspector; (7) the building complies with all the provisions of the building code; (8) by moving his main clinic from the southwest corner of the land to the present location appellee eliminated a serious traffic hazard, making the street crossing safer for school children attending a school directly across the street from the tract, and greatly improved the looks and value of his own property and that of the surrounding neighborhood; (9) appellee will suffer unnecessary hardship if he is not permitted to use said building for his veterinary office and as a small animal clinic; and (10) the Board acted arbitrarily in refusing to order granting of the occupancy permit.

The court concluded that since appellee had been using the land and buildings as a veterinary clinic and office before and at the time of the enactment of the ordinance and before and at the time the land was annexed by the City, and at all times since, he has a legal right to continue such use; that appellee did not make such a structural alteration as is contemplated by the ordinance; that the Board's refusal to order the issuance of the permit was arbitrary and was an abuse of discretion; and that denying appellee the right to such use of the property which was begun before its annexation is a taking of property without due process.

Appellant contends that the court erred in ordering the issuance of the occupancy permit because appellee made a "structural alteration" by his "combining and rebuilding two old buildings," thereby creating a building in which he had no nonconforming rights. We have to determine whether the evidence supports the court's conclusion that there was no structural alteration.

The two buildings were set ten feet apart and "tied" together; a concrete slap was poured and the buildings were placed on the slab; partition walls were put in one building; terrazzo was put over the slab; and the ceilings were soundproofed. Mabry, a building contractor who did the work for appellee on the buildings, testified that "Tex-O-Lite G. E." was put on the inside walls, "which is as clean and sanitary wall as you could ever get." He said that practically all the money was spent on the inside of the buildings, and "the biggest part" was spent on the wall covering. He did not consider the work a "major operation" or a major remodeling job.

Appellant says there are no Texas authorities construing the term "structural alteration," and we have found none.

In Paye v. City of Grosse Pointe, 279 Mich. 254, 271 N.W. 826, it was held that removal of the fronts of two store buildings, with access from the street being had through three doorways, and replacing the fronts with one modern glass front across the two buildings, with only one access from the street, and that through a center door, was not a structural alteration.

In Klumpp v. Rhoads, 362 Ill. 412, 200 N.E. 153, it was held that installing a cement floor and toilet, removing the stump of a tree, changing two windows and a door, and painting the building, did not amount to a structural alteration.

Placing stucco on the outside of a building, cementing nearly 10,000 square feet of the adjoining area, making curb cuts, putting six 550-gallon gasoline tanks under the

surface of the ground and installing six gasoline pumps above the surface, did not constitute a structural alteration in the opinion of the court in 440 East 102nd Street Corporation v. Murdock, 285 N.Y. 298, 34 N.E.2d 329, 331.

In the last cited case it was said: "Zoning laws which curtail and limit uses of property confer no privilege upon property owners. Even though in case of necessity such laws are properly within the exercise of the police power, the whole and each and every of the parts must be given a strict construction since they are in derogation of common-law rights."

In Pross v. Excelsior Cleaning & Dyeing Co., Inc., 110 Misc. 195, 179 N.Y.S. 176, 179, the court said: "What is or amounts to a structural change is not easy of definition. The term is elastic. * * * By structural change, in cases of this character, I believe is meant such a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance, the fundamental purpose of its erection, or the uses contemplated, or a change of such a nature as would affect the very realty itself—extraordinary in scope and effect, or unusual in expenditure."

In City of Miami v. McCrory Stores Corporation, 5 Cir., 181 F.2d 368, 370, we find the following language:

"It was incumbent upon the city to maintain its position that the alterations in question were for 'structural alterations' within the meaning of the ordinance. Without citing or discussing the many authorities cited by appellants and appellees, it is sufficient to say that they all show clearly that there is no fixed and definite legal meaning attached to these words when used in such ordinances; that, on the contrary, under such ordinances, the question as to each building is one of fact.

"The district judge heard full evidence as to the character of the construction proposed, and concluded that it was not a 'structural alteration'. We think the evidence sustains his finding of fact and that this ends the case."

We are of the opinion that the evidence in this case supports the court's conclusion that appellee did not accomplish a structural alteration in the meaning of the ordinance. This holding renders unnecessary any discussion of the other questions briefed by the parties.

The judgment is affirmed.