John P. Donohoe, J.
In this action for a declaratory judgment, the owner of a commercially zoned parcel of land on the south side of Boston Post Road in the Village of Larchmont and his prospective tenant sue the governing board of the village and its inspector of buildings for a judgment declaring that an amendment to its zoning ordinance prohibiting plaintiff’s proposed use of the land for a restaurant, is invalid. Plaintiff’s motion for summary judgment was denied by the Justice at Special Term, Part I. A trial preference was granted on January 6, 1975, upon motion of the defendants.
The parcel, which is involved in this action, contains about 33,200 square feet of land. It lies on the southerly side of Boston Post Road (US Route 1) at the westerly edge of the Village of Larchmont. It is bounded on the west and south by Deane Street. The major portion of the plot, lying along the Boston Post Road, containing 28, 650 square feet, is zoned retail business. A minor portion, lying along Deane Street, is zoned 5,000-square foot residential. The lot was sold by the Village of Larchmont to the plaintiff, Veneróse, in 1951 for $8,500. At that time, it was a mountain of rock. Some 9 or 10 years ago, Veneróse had the rock removed and the lot leveled at a cost of approximately $50,000. He has paid about $27,000 in real estate taxes on the property since he acquired it and has not received any income from it. He Currently pays about $4,278 per year in real extate taxes on the tract.
In 1972, Veneróse entered into a lease with Burger King, his tenant and coplaintiff in this action, subject to compliance with the zoning ordinance. Burger King intended to construct and operate a restaurant on the premises in which it would prepare and serve its patrons a limted menu, with fast service and at minimal prices. The restaurant was designed to provide seating for about 104 people and off-street parking for about 35 cars.
Burger King applied for a building permit to construct the proposed restaurant in January, 1973. The zoning ordinance *903 then permitted restaurants in that district. Instead of acting on the application, the municipal authorities of Larchmont prepared an amendment of the zoning ordinance to prohibit self-service or cafeteria-type restaurants and conducted a public hearing on February 26, 1973 to consider the amendment, but the village board declined to adopt it. On May 12, 1973, the village board again conducted a public hearing on notice to consider an altered amendment of the zoning ordinance, and this time adopted it. Prior to the adoption of the amendment, the definition of permitted restaurants in retail business districts (schedule controlling buildings and land, p 2, col 2) read "4. Restaurant, sale of food and drink and food products, but not including lunch wagons, hot dog stands, diners, dining cars, or similar refreshment stands or refreshment or eating stands with open air or outside counters. No outdoor tables will be permitted nor the consumption of food and drink and food products on the premises outside of the principal building.” The May 21, 1973 amendment changed the definition of permitted restaurants in retail business districts to read, at the end of the first sentence, "or fast food operations, and not including indoor counter service restaurants intended to cater to motor vehicle trade which shall serve in disposable containers and provide on-site parking.” The words "or fast food operations” had not been included in the notice of hearing, but the board, taking no chances, added them at the time of the adoption of the amendment. In that way, the board amended the ordinance specifically to exclude Burger King from its intended use of the property, while its application for a building permit was pending.
The village board re-enacted the quoted amendment as a local law in February, 1974, while this action was pending, apparently to cure the defect of omitting the words "or fast food operations” from the notice of hearing in 1973.
The inspector of buildings denied the building permit to Burger King in May, 1973, after the adoption of the amendment, upon the ground that the intended restaurant would violate the zoning ordinance in that, "such restaurant is intended to cater to motor vehicle trade; and that the plans indicated that "food will be served in disposable containers” and upon further ground that "the plans further provide on-site parking which is not included as a permitted principal use.” The denial was thus grounded squarely upon the amendment.
*904 The proof at the trial and the court’s inspection of the premises, in company with counsel, disclosed the character of the neighborhood. Boston Post Road is a 4-lane highway which carries what Burger King’s former manager of its real estate division describes as a medium amount of traffic. No modern traffic count was introduced, but the testimony was that the road carried more than 24,000 vehicles per day before the Connecticut Turnpike was built. The south side of the entire block in which plaintiffs property lies is zoned retail business to a depth of 100 feet. About one half of the northerly side of the Boston Post road, directly opposite this parcel, is zoned retail business and the rest is zoned 7,500-square foot residential. The retail business district on the north side extends west to the village boundary. The areas to the rear of both districts are zoned 5,000-square foot residential. The areas on both sides of the Post Road to the east are zoned 5,000-square foot residential for a distance of about 4,300 feet. At that point, extensive retail business districts begin on both sides of the highway. The land is developed commercially. Plaintiffs property occupies the southeast corner of an intersection. The other three corners are occupied by gasoline service stations. Across the Post Road are a restaurant, a retail store, a wholesale panelling store, a real estate office and a parking lot and auto retail business. In fact, both sides of the Post Road, in both directions, are actually used primarily for business and other public uses.
The Court of Appeals coined a phrase which suits this case well. The phrase is ad hocery. It appeared in Town of Bedford v Village of Mount Kisco (33 NY2d 188) where it was used as the antonym of comprehensiveness of planning. Formerly it was called spot zoning.
It matters little what descriptive phrase is applied. The anatomy of the process was to try to zone out a permitted use which the legislative board thought undesirable, probably as the result of local pressure. In doing so, it deprived the owner of the economic return of the use of his land to which he was lawfully entitled. This door-slamming procedure was aggravated by the fact that the village stood by for 22 years while Veneróse paid it $8,500 for the land, spent $50,000 to make it commercially usable, paid it $27,000 in real estate taxes and currently pays it nearly $4,300 annually in real estate taxes. The village adopted this ad hoc amendment at the very moment when he was about to begin to realize a return.
*905 Quite apart from the obvious injustice of the board’s eleventh hour exclusionary amendment, the amendment is not in harmony with the development and use of the neighborhood. There are three gasoline stations on the three corners of the intersection upon which the property borders. Up and down the Boston Post Road in both directions commercial ventures abound, attracting patrons and customers. No real distinction is made between the proposed Burger King operation and the restaurant across the street. No distinction is made in the ordinance in the generation of traffic or activity between Burger King and the many other ventures along both sides of Boston Post road.
This amendment is arbitrary. It embodies no substantial and rational relationship between evils reasonably apprehended and the provisions which were enacted to prevent or cure them. (See Rathkopf, Law of Zoning and Planning [4th ed], ch 4, p 4-5; Matter of Bonan Realty Corp. v Young, 16 Misc 2d 119.) The imposition of reasonable restrictions through zoning ordinances finds justification only in the promotion of public safety, health and welfare. (Matter of 440 E. 102nd St. Corp. v Murdock, 285 NY 298; Matter of Salem Trader Rest. Inc. v Reitfort, 63 Misc 2d 753.) There appears nothing in plaintiffs intended use of the property which would change or threaten to change the character of the neighborhood or otherwise adversely affect public health, safety and welfare within the neighborhood.