INTERSTATE EQUIPMENT COMPANY v. C. CHRISTOPHER SMITH,
   RECEIVER FOR BOLLINGER CONSTRUCTION COMPANY,
   GREAT AMERICAN INSURANCE COMPANY, AND NELLO L.
   TEER COMPANY (INC.)

No. 7622SC157

(Filed 3 November 1976)

1. **Principal and Surety § 10— contractor's bond — intended beneficiaries — action against surety**

   The intended beneficiaries of a contractor's or subcontractor's bond may maintain actions in their own names against the surety on such bond.

2. **Principal and Surety § 10— private contractor's bond**

   In a private contractor's bond the parties are free to agree at arm's length on the extent of the coverage desired.

3. **Principal and Surety § 10— highway construction bond — meaning of "materials" — equipment rental**

   In a surety bond conditioned upon the contractor paying those furnishing "materials" in the construction of a highway, "materials" consist of articles necessary and indispensable to performance of the contract which the parties must reasonably contemplate will be incorporated into the work and which lose their identity in the finished product; therefore, such a bond does not cover amounts due for the rental of equipment.

4. **Principal and Surety § 10— private construction bond — consideration with contract — intent of parties**

   While a construction contractor's payment bond should be read in conjunction with the construction contract, the provisions of the bond should not be extended beyond the reasonable intent of the parties gathered from the language and purpose of the bond.

5. **Principal and Surety § 10— terms of bond in conflict with construction contract**

   Where the provisions of a bond conflict with those of a contract, the terms of the bond control over those of the contract in determining the surety's liability.

6. **Principal and Surety § 10— highway construction bond — conflict between bond and contract — bond for "labor and materials" — rental of equipment**

   Where a highway construction contract required the subcontractor to "pay all indebtedness" arising out of its operations and to provide a "satisfactory Payment bond," and the bond provided by the subcontractor covered only "payment to all persons supplying labor and material," the language of the bond conflicted with that of the contract and the terms of the bond controlled the liability of the bond surety; therefore, the surety was liable only for amounts due for labor and materials and not for amounts due for the rental of equipment.

7. **Principal and Surety § 10— highway construction bond — contract provision — no intent to include equipment as "labor and materials"**

Provision of a highway construction contract requiring a subcontractor to furnish "all supervision, labor and materials, including equipment and incidentals" did not show an intent by the parties to include equipment within the category of labor and materials in the subcontractor's bond covering "payment to all persons supplying labor and material."

8. **Principal and Surety § 10— payment bond — meaning of "labor and materials"**

As used in a payment bond, "labor and materials" mean such labor and materials as are necessary to construct the work in accordance with the contract.

9. **Principal and Surety § 10— payment bond for "labor and materials" — equipment repairs**

Whether labor and parts used in repairing equipment come within a payment bond for "labor and materials" depends on whether the repairs are major or incidental; major repairs add materially to the value of the equipment and render it available for other work while incidental repairs consist of labor and parts which are needed to keep the equipment operational during the construction period, which are not of a permanent nature, and which do not appreciably add to the value of the equipment.

10. **Principal and Surety § 10— payment bond for "labor and materials" — repairs to leased equipment — tire adjustment charge**

The cost of repairs made on leased equipment after the equipment was returned to the lessor and a tire adjustment charge were not incidental repairs and did not come within the coverage of a payment bond for "labor and materials."

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 6 February 1976 in Superior Court, IREDELL County. Heard in the Court of Appeals 27 May 1976.

Plaintiff originally instituted this action against Bollinger Construction Company, Nello L. Teer Company, and Carolina Power and Light Company. After institution of this action, Bollinger Construction Company was placed in receivership in Robeson County and C. Christopher Smith was appointed receiver. The receiver was made a party in lieu of Bollinger.

Summary judgment has been entered against the receiver of Bollinger in favor of plaintiff, but plaintiff has recovered nothing under its judgment against the receiver. Plaintiff has entered voluntary dismissals of its action against Nello L. Teer Company and of its action against Carolina Power and Light Company. Therefore, the only parties to this appeal are plain-

tiff and Great American Insurance Company. Great American was the surety on Bollinger's payment bond.

The controversy between the parties arose fo'lowing the construction of a public highway project in the State of Virginia. Adams Construction Company, Roanoke, Virginia, was prime contractor on the project. Nello L. Teer, Durham, North Carolina (Teer), was a subcontractor of Adams Construction Company on the project. Bollinger Construction Company, Lumberton, North Carolina (Bollinger), was a subcontractor of Teer for a part of the grading work on the project. Plaintiff, Interstate Equipment Company, Statesville, North Carolina (Interstate), leased grading equipment to Bollinger, which was used by Bollinger on the Virginia project. Interstate contends that Bollinger is indebted to it for the leased equipment, repairs thereto, and service charges in the total sum of $39,670.83.

Teer required Bollinger to furnish a payment bond in connection with the contract between Teer and Bollinger. Great American Insurance Company (Great American), the remaining defendant, became the surety on Bollinger's payment bond. The payment bond executed by Great American contains the following language:

> "Now, therefore, the condition of the foregoing obligation is such that if the Principal shall well and truly perform and promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and in all duly authorized modifications of said contract that may hereafter be made, then this obligation shall be void, otherwise it shall remain in force."

Plaintiff seeks recovery from Great American under the terms of the foregoing bond for $39,670.83—plaintiff's total claim against Bollinger. Both plaintiff and Great American moved for summary judgment. The trial judge denied plaintiff's motion and granted summary judgment in favor of Great American. Plaintiff appealed.

*Raymer, Lewis, Eisele & Patterson, by Douglas G. Eisele, for the plaintiff.*

*Haywood, Denny & Miller, by John C. Martin, for Great American Insurance Company.*

BROCK, Chief Judge.

[1]  It has long been established that a person for whose bene-
fit a promise is made to another, though not a party to the
agreement or privy to the consideration, may maintain an
action upon the promise, and one who has assumed or contracted
for the payment of another's debt may be sued directly by the
creditor. 2 Strong, N. C. Index, Contracts, § 14. The same prin-
ciple applies to the intended beneficiaries of a contractor's or
subcontractor's bond, and such a beneficiary may maintain an
action in his own name against the surety on such bond. *Glass
Co. v. Fidelity Co.*, 193 N.C. 769, 138 S.E. 143 (1927). The
problem in the present case is whether the plaintiff, Interstate,
is a beneficiary under the bond upon which the defendant,
Great American, is the surety.

[2]  Both parties, as well as this Court, view the contractor's
bond given by Bollinger to Teer as one not required by statute,
but rather as a private bond agreement. In a private contractor's
bond the parties are free to agree at arm's length on the extent
of coverage desired.

[3]  The bond executed by Bollinger and Great American as
surety was a payment bond for the protection of those supply-
ing labor and material. Plaintiff claims that this bond should
cover the rental of equipment. In private contractor's bonds
neither equipment nor rental of equipment is considered "ma-
terials." 17 Am. Jur. 2d, Contractor's Bonds, § 7, p. 196.
"Materials" within a surety bond, conditioned upon the con-
tractor paying those furnishing materials in the construction
of a roadway, consist of articles necessary and indispensable
to performance of the contract, which the parties must reason-
ably contemplate will be incorporated into the work and which
lose their identity in the finished product. *Hardware Co. v.
Indemnity Co.*, 205 N.C. 185, 170 S.E. 643 (1933). Equipment,
such as the Wabco scrapers in this case, is neither used up nor
incorporated into the work but is rather a component of the
contractor's plant.

Under the above-stated general principle, plaintiff's claims
against the surety for amounts due on the equipment leases
($27,447.29) are invalid. Plaintiff argues, however, that if the
contractor's bond is read in conjunction with the construction
contract, the equipment leases would come within the coverage
of the bond. We disagree.

The pertinent provisions of the contract relied on by the plaintiff are:

"You [Bollinger] will fiance your operations in every detail and promptly, or upon demand, pay all indebtedness arising out of your operations hereunder."

*   *   *

"You are to furnish us satisfactory Payment bond being in the full amount of this subcontract."

*   *   *

"You will furnish all supervision, labor and materials, including equipment and incidentals, to do properly the items of work listed below at the designated unit prices and in accordance with the contract, plans, specifications, special provisions and directions of our representative who is in charge of the project."

[4, 5]  While it is certainly a correct rule of construction that the payment bond be read in conjunction with the construction contract, the provisions of a contractor's bond should not be extended beyond the reasonable intent of the parties gathered from the language and purpose of the bond. *Lumber Co. v. Lawson,* 195 N.C. 840, 143 S.E. 847, 67 A.L.R. 984 (1928). Furthermore, where the provisions of the bond conflict with those of the contract, the terms of the bond are controlling over those of the contract in determining the surety's liability. 17 Am. Jur. 2d, Contractor's Bonds, § 4, p. 194.

[6]  In the case at bar the contract called for Bollinger to provide Teer with a "satisfactory Payment bond." Bollinger and Great American as surety executed a bond conditioned simply on "payment to all persons supplying labor and material in the prosecution of the work provided in said contract." While the contract also required Bollinger to "pay all indebtedness" arising out of his operations, there is no wording in the condition of the bond that in any way extends coverage to include "all indebtedness." The language of the bond conflicts with that of the contract; therefore, the terms of the bond must control. Those terms encompass only labor and materials, and not equipment.

[7]  Plaintiff argues that the provision requiring Bollinger to furnish "all supervision, labor and materials, including equipment and incidentals" shows the intent of the parties to include

equipment within the category of labor and materials. By reading the contract as a whole and thereby placing the provision in its proper context, it is evident that the provision is not intended to bring equipment within the category of materials. The provision comes at a point in the contract describing the items of work to be performed by Bollinger. The language of the provision is but a preface to the specific job description. It merely defines Bollinger's construction responsibilities. Furthermore, the contract itself makes the traditional distinction between equipment and materials. In the paragraph immediately after the provision for a satisfactory payment bond, the contract says:

> "You [Bollinger] shall *immediately procure and prepare your materials and manufactured products to be incorporated in the completed work and advise us of your source of supply and delivery schedule of said materials.* You shall have available the necessary workmen and equipment so as to be ready to begin work immediately following our direction to do so." (Emphasis added.)

The contract called for Bollinger to pay all indebtedness and provide a satisfactory payment bond. Bollinger and Great American as surety provided a payment bond simply covering labor and materials. Teer accepted this bond as satisfactory. These parties were dealing at arm's length and were free to agree on the extent of the bond's coverage. They could have easily included rental of equipment, and had they done so, the surety would have been liable. The parties did not affirmatively include equipment rental within the bond coverage, nor can their contract be properly construed to include such coverage. Summary judgment denying plaintiff's claims for amounts due on rental of equipment was proper.

[8-10]   Besides its claims for lease payments, plaintiff also claims the cost of repairs made on the leased equipment ($1,304.08), a tire adjustment charge ($6,000.00) also claimed as a repair, and service charges ($4,419.46) on the overdue lease and repair accounts. As to the two items classed as repairs, the question is whether they are "labor and materials" within the coverage of the payment bond. The term "labor and materials," as used in a payment bond, means such labor and materials as are necessary to construct the work in accordance with the contract. 17 Am. Jur. 2d, Contractor's Bonds, § 7, p. 196. Whether the labor and parts used in repairing equip-

Equipment Co. v. Smith

ment are within the bond depends on whether the repairs are major or incidental. Major repairs add materially to the value of the equipment and render it available for other work. The replacement of tires falls into this category. 67 A.L.R. 1241. Thus, the tire adjustment charge claimed by the p'aintiff as a repair does not fall within the labor and materials covered by the bond.

Non-major repairs are those which are incidental to the carrying on of the work. They consist of labor and parts which are needed to keep the equipment operational during the construction period, which are not of a permanent nature, and which do not appreciably add to the value of the equipment. 67 A.L.R. 1242. The only materials before Judge Collier concerning repairs, other than the tire adjustment considered above, show that the repair charges claimed by plaintiff were for work done after the equipment had been returned to plaintiff. The repairs in question were not needed to keep the equipment operational during the construction work. The defendant as surety is not liable on the bond because the repairs claimed were not necessary for the construction and therefore not within the covered category of "labor and materials."

Since Great American is not liable as surety on the lease payments or repair charges, it follows that Great American is not liable for the service charges attached to Bollinger's failure to pay those claimed amounts.

The judgment of the Superior Court of Iredell County denying plaintiff summary judgment and granting defendant summary judgment is

Affirmed.

Judges BRITT and MORRIS concur.