626 P.2d 1307

**Frank SPINOSO and Mary Spinoso, Plaintiffs-Appellees,**

v.

**RIO RANCHO ESTATES, INC., and Amrep Construction Corporation, Defendants-Appellants.**

**No. 4719.**

Court of Appeals of New Mexico.

March 12, 1981.

Certiorari Denied April 13, 1981.

Lastrapes & Merl, Albuquerque, for defendants-appellants.

Robert C. Resta, Albuquerque, for plaintiffs-appellees.

## OPINION

ANDREWS, Judge.

This suit was brought to recover damages for construction defects in the building of a house. The plaintiffs, Frank and Mary Spinoso (Spinosos) entered into an agreement with Rio Rancho Estates, Inc. (Rio Rancho) to purchase a lot on which a subsidiary, Amrep Construction Corporation, was to construct a house. The agreement, drawn by Rio Rancho, included the following provision:

> Seller agrees, at its sole cost and expense, to remedy any substantial defect in workmanship or materials of the structural components of the dwelling that shall be called to its attention by notice in writing from Purchaser on or before the first anniversary of the date of closing of title.[1]

The parties closed on the purchase November 26, 1974. On the same day, after the Spinosos made their initial inspection of the house, they notified Rio Rancho of deficiencies in construction. Enumerated items included cracks in the exterior walls of the house. Further written notices of the exterior wall defects were given to Rio Rancho on March 19, 1975, September 30, 1975, January 20, 1976, and September 11, 1977. These written notices were either mailed or personally delivered to the proper Rio Rancho authorities.

During the three years following the first written notification of defects in the exterior walls, Rio Rancho made various attempts at repair. The efforts were unsuccessful, however, and the Spinosos were never satisfied with the results. After Rio Rancho sent notice that it would make no further repairs on the house, the Spinosos filed this suit asserting three causes of action; the first seeking damages for breach of contract with respect to the warranty provision, the second for negligence, and the third for punitive damages. The court entered judgment against Rio Rancho for breach of contract ($4,807.92) and negligence ($1,000.00).

In this appeal, Rio Rancho alleges that the trial court erred in deciding that the defect in the stucco[2] constituted "[a] substantial defect * * * of the structural components of the dwelling." Rio Rancho also takes exception to the trial court's finding of a duty to repair the defect and the conclusion that it had therefore been negligent.

As its first issue, Rio Rancho asserts that the defects occurring in the stucco on the exterior of the house were not defects in workmanship or materials of the "structural components" of the dwelling; and were, therefore, not covered under the purchase agreement. According to Rio Rancho, the stucco on the exterior of the house is merely ornamental, and does not involve the structural integrity of the house.

---

1. *Compare Sparks v. Melmar Corp.*, 93 N.M. 201, 598 P.2d 1161 (1979) where the contract provision was almost identical, but did not specify "structural" defects.

2. The stucco used was a texture coating called Tex-Cote.

8

Like this case, *Koenigshofer v. Shumate*, 68 Ill.App.2d 474, 216 N.E.2d 195 (1966), dealt with the definition of the word "structural." In that case which involved a dispute over a clause in a lease, the court concluded that the "classification of repairs as 'structural' depends not so much on the physical characteristics of the deficiency as on its foreseeability, from which the intentions and agreements of the parties may be inferred." 216 N.E.2d 195, 196. *Accord Baxter v. Ill. Police Federation*, 63 Ill. App.3d 819, 20 Ill.Dec. 623, 380 N.E.2d 832 (1978); *Hardy v. Montg. Ward & Co.*, 131 Ill.App.2d 1038, 267 N.E.2d 748 (1971); *440 E. 102nd St. Corp. v. Murdock*, 285 N.Y. 298, 34 N.E.2d 329 (Ct.App.1941). We find this analysis helpful in examining the question presented here. The trial court could properly consider the intent of the parties in determining whether the defects in the stucco were defects in workmanship or materials of the "structural components" of the building.

To ascertain the intent of the parties to a contract, great weight, if not controlling weight, is to be given to the construction of the contract adopted by the parties, as reflected by the available evidence. *Mobile Investors v. Spratte*, 93 N.M. 752, 605 P.2d 1151 (1980). In this case, the intentions and agreement of the parties to the contract can be ascertained from the following evidence.

An official of Rio Rancho corresponded with the Spinosos several times, and each time indicated:

Repairs will be underway shortly and I hope you will find everything satisfactory.

These statements reflect Rio Rancho's understanding that the stucco problem was covered under the warranty and were its obligation to correct. Further, at trial, Mr. Joseph Edwards, Manager of Rio Rancho's Customer Service Department, when asked whether he believed Mr. Spinoso "was covered for a one-year period," responded as follows:

A. In the beginning, yes.

Q. And workmanship, materials and the constructional component of the dwelling?

A. Well, one year, yes. That's the way I interpret it.

Mr. Spinoso, who had been given no choice as to the use of Tex-Cote on his home, testified that there had been continuous patching and repatching of the ever-appearing cracks. Mr. Steve Scutt, plaintiffs' expert witness, testified as to the techniques and procedure by which stucco and Tex-Cote are fastened to the exterior sub-walls of a building, including the methods necessary to remove Tex-Cote once it is applied (sandblasting), and the remedy if it cannot be removed (relathing and restuccoing).

Mr. Scutt testified that texture coated products will crack when applied to a porous surface like stucco which must move and breathe. Tex-Cote is rigid and does not give with the movement or "breathing" of the sub-surface. When cracks appear, as is inevitable, moisture invades the cracks. According to Mr. Scutt, because sealing causes more cracking and peeling, there is only one remedy when texture coating begins cracking—to completely relathe and restucco.

The testimony of Mr. Bill Swingle, defendant's construction superintendent, supported in large measure Mr. Scutt's testimony regarding the cause of the cracking and peeling. In addition, he confirmed that Rio Rancho never did a complete job of either removing old stucco or putting new stucco on the Spinosos' dwelling. Another of Rio Rancho's employees established that the company no longer used the product.

In interpreting a contract uncertainties must be construed most strongly against the party drafting the contract, in this case, Rio Rancho. *Mobile Investors v. Spratte, supra; Schultz and Lindsay Construction Co. v. State*, 83 N.M. 534, 494 P.2d 612 (1972). Using this test, the evidence

adduced at trial was more than adequate to support the trial court's conclusion that the "defendants are in breach of contract * * * for failure to perform the contract with respect to its warranty of completion of construction and * * * to remedy any substantial defect in workmanship or material * * * *" The evidence was sufficient for the trial court to determine that the defects which served as the basis for this suit related to the understanding the parties had as to the warrantied "structural components" of the Spinoso home.

■■■■ By way of defense, Rio Rancho claims that at the time it refused to make further repairs the warranty had expired and no further work was required under the contract. We consider this argument specious. The agreement did not set a one-year limitation on repairs, but rather a one-year maximum period for the discovery and proper notification regarding defects. Since the defects were so discovered and Rio Rancho was adequately notified, the warranty was applicable. Rio Rancho's failure to repair the defects constituted a breach of contract.[3]

■■■■ Defendant's second issue relating to the trial court's finding of negligence is premised upon the assumption that because the warranty did not cover the defect, there was no duty to repair. Rio Rancho is in error in its premises. As discussed above, the defect was covered under the warranty provisions of the agreement. Negligence is a matter for the trier of fact to decide—in this case the trial court judge. *Yeary v. Aztec Discounts, Inc.*, 83 N.M. 319, 491 P.2d 536 (Ct.App.1971). The evidence is sufficient to support the trial court's conclusion that Rio Rancho was negligent in repairing or attempting to repair the Spinoso home.

The decision of the trial court is affirmed.

IT IS SO ORDERED.

HERNANDEZ, C. J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge, specially concurring.

I concur in affirmance.

Defendants' interpretation of the contract that bears upon the meaning of *"any substantial defect* in workmanship or materials *of the structural components of the dwelling"* is illusory. A wall is a "structural component." Treas.Reg. 1:48–1(e)(2) of the Internal Revenue Code, *Kramertown Company, Inc. v. C. I. R.*, 488 F.2d 728 (5th Cir. 1974).

"Materials" is "[t]he substance or matter of which anything is made." Black's Law Dictionary, 1128 (Rev.Fourth Ed.1968). It is something that goes into and becomes a part of the finished structure. *D. H. Overmyer Warehouse Co. v. W. C. Caye & Co.*, 116 Ga.App. 128, 157 S.E.2d 68 (1967); *Interstate Equipment Co. v. Smith*, 31 N.C. App. 351, 229 S.E.2d 241 (1976).

"A defect is defined to be an imperfection, flaw, blemish, or fault." *Galloway v. City of Winchester*, 299 Ky. 87, 184 S.W.2d 890, 893 (1944). Black's Law Dictionary, p. 506, defines a defect as " * * * a deficiency in something essential to the proper use for the purpose for which a thing is to be used." *McMinn v. Damurjian*, 105 N.J.Super. 132, 251 A.2d 310 (1969).

*Eliott S. Peterson Co. v. Parrott*, 129 Me. 381, 152 A. 313, 315 (1930) says:

> * * * If "the paint on the automobile was not in good condition and was not properly applied," defective workmanship or material or both was plainly indicated, for which defendant would be entitled to damages in recoupment.

It would be difficult to conceive of defective material used in construction that would not involve defective workmanship in

---

**3.** Defendant's claim that that statute of limitation on the cause of action ran before suit was filed is also without merit. As pointed out by the trial court, the cause of action did not arise at the time the defect was first noted, but when

defendant refused to cure the defect. *See Davis v. General Motors Corp.*, Ct.App. 4681, decided December 11, 1980; *Sparks v. Melmar Corp.*, 93 N.M. 201, 598 P.2d 1161 (1979).

one way or another. *Benson v. Denny*, 14 S.W.2d 456 (Mo.App.1929).

Under the real estate contract, defendants agreed to remedy any deficiency, imperfection or flaw in the Tex-Cote placed on the exterior walls of the house that defendants sold to plaintiffs. This exterior cover was defective in workmanship and materials. Tex-Cote was deficient in something essential for the purpose for which it was to be used. The Tex-Cote was peeling off in two-foot sheets. It was defective. For defendants to argue that this peeling and cracking of Tex-Cote, which was "paint with an aggregate in it," was not a "substantial defect in workmanship or materials of the structural components of the dwelling" is a poor way to seek an escape hatch from liability. "Home is where the heart is." It is the most popular and enduring of all earthly establishments. To put on exterior coating that destroys its appearance does not find any sympathy in the concepts of justice and the law in the courts.

Defendants rely on *440 East 102nd Street Corporation v. Murdock*, 285 N.Y. 298, 34 N.E.2d 329 (1941); *Hardy v. Montgomery Ward & Co.*, 131 Ill.App.2d 1038, 267 N.E.2d 748 (1971); *Baxter v. Ill. Police Federation*, 63 Ill.App.3d 819, 20 Ill.Dec. 623, 380 N.E.2d 832 (1978).

*Murdock* held that stuccoing of a building did not constitute a "structural alteration." Of course not. We are not involved with "structural alterations." *Hardy* and *Baxter* held that in a landlord-tenant relationship where a lessee agreed to make all repairs, and the plaster fell from the ceiling, the landlord had no duty to make non-structural repairs. Plaster attached to a ceiling is non-structural. The falling of plaster was the result of "a defect in workmanship and materials of the structural components of the building," *but the tenant agreed to repair this defect.*

In a seller-purchaser real estate contract, defendants, as sellers, stand in the shoes of the tenant. Defendants agreed to repair the defect. Defendants cannot escape liability.