PROVO CITY CORPORATION, Plaintiff and Respondent,

v.

NIELSON SCOTT COMPANY, INC., and Demetrois Agathangelides, dba Greek Gardens, Defendants and Appellants.

NIELSON SCOTT COMPANY, INC., Third-Party Plaintiff and Appellant,

v.

Demetrois AGATHANGELIDES, dba Greek Gardens, Third-Party Defendant.

No. 16136.

Supreme Court of Utah.

Nov. 8, 1979.

Gerald L. Turner, of Turner & Perkins, Salt Lake City, Gordon J. Low of Hillyard, Low & Anderson, Logan, for defendants and appellants.

Glen J. Ellis, Provo, for plaintiff and respondent.

**STEWART, Justice:**

Provo City brought this breach of contract suit against a contractor, Nielson Scott Co., Inc., and a subcontractor, appellant Demetrois Agathangelides, dba Greek Gardens, who provided public improvements for the city in connection with a downtown redevelopment project. The trial court held that under a contractual warranty the risk of loss of trees planted to replace an initial planting of trees which did not live continued to be on the subcontractor beyond the express one-year warranty period provided in the contract. The city was awarded damages. We reverse.

Agathangelides was responsible for the tree planting and landscape portion of the development project. It is undisputed that he installed all the trees required by the contract, thus substantially completing his contractual duties, by December 10, 1975. An inspection of the trees on May 5, 1976, disclosed that twelve of the trees had died during the winter. The city, through its supervising architect, John L. Maas, made demand upon Agathangelides to replace the twelve trees. Agathangelides responded by memorandum as follows:

Because of the potential hazard of transplanting large trees this late in the year, I will transplant all large London Plane

trees that have died this fall at the same time I complete the landscaping for the University Avenue Beautification Project—no later than November 15, 1976. This will be done to fulfill my contract and at my expense.

The delay in replanting until fall was approved by the city, and the replacement trees were planted while in a dormant state in November 1976. It is not alleged or proved that they were dead or unhealthy at this time. However, in the spring of 1977 all twelve trees were found to have died over the winter. The city again made demand upon Agathangelides to replace the trees. He refused to do so on the ground that the warranty period of the contract expired on December 10, 1976, one year from the date of substantial completion according to the published specifications for the Provo City Center Street Project.

Agathangelides contended that his liability was limited by the express terms of his contract. The trial court rejected this contention and awarded the city a judgment representing the actual cost of replacement against the contractor, and a judgment for the same amount in favor of the contractor and against the subcontractor, Agathangelides. The court made the following pertinent conclusions of law:

1. That under the contract risk of loss for the trees planted by the subcontractor under his contract with the general contractor and the plaintiff, lies solely upon the subcontractor.

2. That the warranty of fitness provided for in the contract goes for one year from date of substantial completion which was December 9, 1976, plus sufficient additional time to determine that the replaced trees would actually sustain life through the dormant period and until the following Spring.

* * * * * *

 The issue presented on this appeal is whether Agathangelides was required under his contract to replace trees that were found to have died more than one year after the date of substantial completion, even though the cause of the deaths is unknown. In interpreting the contract in question, this Court deals with a question of law. As such, the same deference need not be accorded the lower court's position as we would accord findings of fact. See *Polk v. Koerner,* 111 Ariz. 493, 533 P.2d 660 (1975); *Rooney v. Vermont Inv. Corp.,* 10 Cal.3d 351, 110 Cal.Rptr. 353, 515 P.2d 297 (1973).

The factual findings of the trial court are based on virtually undisputed evidence. Pertinent to this appeal are findings that December 9, 1975, was the date of substantial completion of Agathangelides' work and its acceptance by the city; that contract specifications required the subcontractor to correct any defects within one year from the date of substantial completion; that the replacement trees planted in November 1976 "were in a dormant stage such that it was impossible to tell whether they would live through the winter"; and that because the replacement trees failed to bud in the spring, the city asked Agathangelides for additional replacements in June 1977, eighteen months after the date of substantial completion. It is significant that no finding of fact was made as to the cause of the death of the trees, which might have been the effect of an unusually harsh winter, the failure of the city to water the trees during the winter, a defect in the trees themselves, or a number of other possible causes.

Agathangelides' subcontract agreement called for him to furnish labor, materials, and equipment "as per plans and specifications complete." The printed Specifications for Provo City Center Street Project included the following provisions applicable to Agathangelides' work:

Planting. 11. Plant Material . . . B. Plants shall be sound, healthy, vigorous and free from plant disease, shall be well-branched, full foliage when in leaf, and have healthy normal root system. Plants shall be freshly dug. Cold storage plants will not be accepted. All plants shall be nursery grown, meeting requirements specified. Plants that are sensitive to shock from elevation change shall be grown at elevations close enough to site to aleviate [sic] any plant damage.

Supplementary General Conditions. 31 Substantial Completion . . . . D. If within one year after the Date of Substantial Completion or within such longer period of time as may be prescribed by law or by the terms of any applicable special guarantee required by the contract documents, any of the work is found to be defective or not in accordance with the contract documents, the contractor shall correct it promptly after receipt of written notice from the owner to do so . . ..

There was no "special guarantee" given by Agathangelides in this case.

Except for the fact that they failed to survive the winter, there was no evidence presented to the court that the replacement trees were unhealthy or defective when planted. To the contrary, Mr. Maas, the supervising landscape architect, testified that he inspected the trees when they were planted and "[a]t that time they were satisfactory." He further stated that Agathangelides had done his replanting job properly. Maas was questioned as to the cause of the trees dying; he attributed their failure to survive the winter to dryness and the severe winter.

Agathangelides testified that the twelve replacement trees were part of a shipment that included five trees to be planted in Salt Lake City; those five trees all survived.

The evidence does not establish, nor did the lower court find, that Agathangelides had breached his contractual duty to provide sound plants in accordance with the specification regarding plant material.

As to the specification setting out the duration of contractual liability, Agathangelides testified that he understood his responsibility to end on December 10, 1976, one year after the undisputed date of substantial completion. The one-year period would not have been applicable under the contract if a special guarantee had been applicable. The city did not allege that a special guarantee existed with regard to Agathangelides' work.

The city argues that there was a novation or modification of the original contract terms when the city agreed to the delayed replacement of the original trees that died. It is true that parties to a written contract may modify, waive, or make new contractual terms, even if the contract itself contains a provision to the contrary. *Cheney v. Rucker*, 14 Utah 2d 205, 381 P.2d 86 (1963); *Dillman v. Massey Ferguson, Inc.*, 13 Utah 2d 142, 369 P.2d 296 (1962). However, the minds of the parties must have met upon an asserted contract modification, *Marnon v. Vaughan Motor Co.*, 184 Or. 103, 194 P.2d 992 (1948), and there is no allegation, proof or finding as to any such modification.

The city contends further that Agathangelides retained liability for the replacement trees under an express or implied warranty. The trial court's findings of fact and conclusions of law are silent as to the existence of any warranty other than that extending for the one-year warranty period set out in the contract specifications, and we are not persuaded by cases cited by the city, dealing with different fact situations, that additional warranties should be read into the contract at issue here. A court will not rewrite an unambiguous contract, *Nuquist v. Bauscher*, 71 Idaho 89, 227 P.2d 83 (1951).

At trial the city attempted to elicit testimony that a trade custom would imply an extension of an express warranty period until the following growing season. The only evidence as to the custom of the industry, however, was offered by Mr. Erickson, a landscape architect and contractor who serves on the board of directors of several industry associations. He testified that guarantee periods extended only for the time period of the contract, and following a final inspection at the termination of such period showing plants to be healthy at that time, "the contract is through." Agathangelides' liability cannot be based on trade custom.

This Court is not unaware of the consideration that should be given a contracting party's right to receive goods that are of

the quality contracted for. Nor do we by this decision ignore the importance of meaningful warranties. However, the subcontractor in this case was entitled to know what his contract obligations were and to be able to rely on express terms that he had assented to. This case does not involve an injured party who lacked bargaining power to protect itself against the imposition of harsh terms; the city could have made part of its specifications additional warranty requirements that would have placed increased responsibilities upon contractors. As we view the contract, Agathangelides fully discharged his contractual responsibilities on December 10, 1976.

The judgment of the court below is reversed, and judgment is to be entered for the defendants.

MAUGHAN and WILKINS, JJ., concur.

CROCKETT, Chief Justice, dissenting:

I agree with the view taken by the trial court. Under the circumstances shown, the only fair, reasonable and practical application of the warranty of the trees for a period of one year was to afford opportunity for observation during a full year, including a dormant and a growing season, so it could be determined whether the trees were "sound, healthy, [and] vigorous . . ." as warranted.

The main opinion correctly recites the facts: the defendant planted the trees it sold the city in the fall of 1975. In the spring of 1976, it was found that 12 of the trees were not alive and the city requested the defendant to replace them.

The fact of utmost significance in this case is that it was the defendant who made the request that the performance of his obligation under the warranty be extended, and that he not replace the trees until No-vember 1976, because that is a better time to transplant trees to assure their survival. The city regarded this as a reasonable and practical request and so agreed. That supplemental agreement, extending defendant's time for planting, was carried out, and the 12 trees were planted in November 1976. But in the following spring, 1977, it was observed that those 12 trees were not alive and therefore did not meet the warranty.

There are two sound and well-recognized principles of law that combine to support the findings and judgment of the trial court. The first is that even though parties may be bound by the terms of a contract, they are free to make collateral or supplemental agreements which they deem to be for their mutual advantage; and this is so even though it may modify the terms of an existing contract.[1] And therefore, the agreement to extend the time for planting could reasonably and justly be regarded as extending the warranty for one year from that time.

The other principle is that a party who enters into a contract is obliged to cooperate in good faith to carry out its purpose in accordance with the intention of the parties when it was made;[2] and if a party does not do so, he cannot take advantage of his own failure in order to escape liability thereon.[3] Applying that principle here, the defendant should not be permitted to take any advantage from his own failure to replace the trees when requested, and thus escape responsibility for meeting the warranty of the trees as he had agreed.

It is my opinion that the trial court was amply justified in its view that defendant's request to delay planting the trees extended the warranty; and in so applying the rules of law to the facts as to require the defendant to make good on his agreement

1. *PLC Landscape Construction v. Piccadilly Fish & Chips, Inc.,* 28 Utah 2d 350, 502 P.2d 562 (1972), citing *Davis v. Payne and Day,* 10 Utah 2d 53, 348 P.2d 337 (1960) and *Cheney v. Rucker,* 14 Utah 2d 205, 381 P.2d 86 (1963).

2. *Weber Meadow-View Corp. v. Wilde,* Utah, 575 P.2d 1053 (1978).

3. *Watson v. Aced,* 156 Cal.App.2d 87, 319 P.2d 83 (1958); *Bartlett & Co. Grain v. Curry,* 1 Kan.App.2d 242, 563 P.2d 1096 (1977). See *Fischer v. Johnson,* Utah, 525 P.2d 45 (1974).

to plant sound and healthy trees. I would therefore affirm the judgment.

HALL, J., concurs with the views expressed in the dissenting opinion of CROCKETT, C. J.