B.R. WOODWARD MARKETING, INC., a Utah corporation, Plaintiff and Appellant,

v.

COLLINS FOOD SERVICE, INC., a Delaware corporation licensed to do business in Utah, and Collins Food International, a Delaware corporation, Defendants and Respondents.

No. 860161–CA.

Court of Appeals of Utah.

May 13, 1988.

Michael A. Neider, Richard L. Halliday (argued), Neider & Hutchison, Salt Lake City, for plaintiff and appellant.

David W. Slagle, Damian C. Smith, Ryan E. Tibbetts (argued), Snow, Christensen & Martineau, Salt Lake City, for defendants and respondents.

Before ORME, JACKSON, and GREENWOOD, JJ.

## OPINION

ORME, Judge:

Plaintiff, B.R. Woodward Marketing, Inc. ("Woodward"), appeals from the district court's grant of summary judgment to defendants Collins Food Service and Collins Food International ("Collins"). The court held that, given the undisputed facts, plaintiff had waived any right it may have had to certain commissions under a sales agreement between the parties. We affirm.

## I. FACTS

Woodward and Collins entered into a Sales Representative Agreement on March 16, 1983 for the purpose of retaining Woodward's services to represent Collins in the food wholesale distribution business. Paragraph 3(a) of the agreement provided that Woodward would be paid a base commission of $3,750.00 on the first day of each month. Paragraph 3(b) of the agreement provided that Collins would pay Woodward an incentive commission based on total sales "written" by Woodward. Under paragraph 3(b), Collins agreed to compensate Woodward monthly, according to a sliding scale, with respect to sales recorded in a "Daily Sales by Salesman" report, with payments to be made on the twentieth day of each month.

Woodward worked for Collins developing and processing accounts and distributing food commodities until late in October 1984, when it received notice of termination. Woodward first made a claim for the incentive commissions pursuant to paragraph 3(b) on November 15, nearly a month after termination. Collins refused to pay Woodward the commissions. Woodward filed an action in Third District Court to recover $50,000 in incentive commissions allegedly owed under the contract.

Early in the litigation, Woodward made a motion for summary judgment on the issue of Collins' liability for the incentive commissions pursuant to paragraph 3(b) of the sales agreement. The trial court denied Woodward's motion, finding that the agreement was ambiguous with respect to the types of sales intended by the parties to be covered by paragraph 3(b) and the types of sales to which the term "written" in paragraph 3(b) applied, and that there were factual issues remaining for determination.

After several months of discovery, Collins, relying principally on the deposition of Brad Woodward, officer and sole employee of Woodward, brought its own motion for summary judgment. The thrust of this motion was that, regardless of how the ambiguous contract might be construed, Woodward had waived or was estopped from asserting its right to claim additional compensation under paragraph 3(b) of the agreement. The court granted Collins' motion for summary judgment, finding that there was no genuine issue as to any material fact and that Woodward, by its conduct, had waived any right it might have had to claim compensation pursuant to the agreement.

## II. SUMMARY JUDGMENT

Woodward argues there were numerous issues before the trial court which precluded summary judgment on its claim for incentive commissions. Woodward claims the undisputed facts did not compel the

trial court's conclusion that, as a matter of law, it waived its right to claim commissions under the sales agreement between the parties.

Generally, summary judgment should be granted whenever it is clear from the undisputed facts that the opposing party cannot prevail. *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 637 (Utah Ct. App.1987). In considering a motion for summary judgment, the court must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing the motion. *Id.*

Therefore, we must determine whether the undisputed facts support the trial court's conclusion that, as a matter of law, Woodward waived any right it may have had to claim compensation under paragraph 3(b) of the sales agreement. The question of whether a right has been waived has been characterized as one of fact, *e.g., Barnes v. Wood*, 750 P.2d 1226, 1230 (Utah Ct.App.1988), although it is perhaps more accurate to view the ultimate conclusion whether waiver has occurred, given particular facts, as a question of law.[1]

## III. WAIVER

In this case, the material facts concerning Woodward's conduct with respect to the incentive commissions under the sales agreement are undisputed. However, Woodward claims that its conduct does not compel the conclusion, as a matter of law, that it waived its right to compensation under the agreement.

█ Waiver is "the intentional relinquishment of a known right." *Barnes v. Wood*, 750 P.2d at 1230. To waive a right,

there must be an existing right, benefit, or advantage; knowledge of its existence; and an intention to relinquish it. *Id.* The party's actions or conduct must unequivocally evince an intent to waive or must at least be inconsistent with any other intent. *Id.*

█ As noted earlier, there is some question as to whether Woodward had an existing right to claim compensation under paragraph 3(b) of the sales agreement. The trial court denied Woodward's motion for summary judgment because it found the contract ambiguous and therefore to pose a factual dispute. *See Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *Seashores Inc. v. Hancey*, 738 P.2d 645, 647 (Utah Ct.App.1987). The trial court subsequently granted Collins' motion for summary judgment without deciding the issue of whether Woodward was entitled to the incentive commissions because it found that even if it did have such a right, it had waived it. Viewing the evidence in a light most favorable to Woodward, we assume for purposes of this appeal that it had a right to the commissions.

Assuming that Woodward had an existing right of compensation under paragraph 3(b), the next question is whether it had knowledge that the right existed. Brad Woodward's testimony at his deposition clearly indicates he became aware that he was entitled to the commissions under paragraph 3(b) shortly after his employment began. Woodward's testimony in this regard was as follows:

Q. Now, when was the first month in which you thought that you were owed something under the incentive commissions clause of the contract 3–B?

A. I guess it was in March of 83—84?

Q. '83 was the year you were hired.

A. Yes, '83.

. . . .

---

1. *See, e.g., In Re Schulte Retail Stores Corp.*, 22 F.Supp. 612, 614 (S.D.N.Y.1937). In the instant case, the material facts relative to waiver are undisputed and, accordingly, the trial court's conclusion that those facts show that Woodward waived its claim is reviewable as a question of law. *See Diversified Equities, Inc. v. American Sav. & Loan Ass'n*, 739 P.2d 1133, 1136 (Utah Ct.App.1987) ("Where the facts are not in material dispute, interpretation placed thereon by trial court becomes a question of law....").

Q. And you felt at the time you were owed the commission under 3–B of the contract?

A. Yes. Based on my understanding, I thought that the money was due me, yes.

Thus, assuming a right to claim incentive commissions existed, Woodward had knowledge of its existence.

Having determined that a right existed, and that Woodward was aware of such a right, the pivotal issue is whether Woodward intended to relinquish his right to claim the incentive commissions or, more precisely, whether Woodward's conduct unequivocally evinced an intent to waive or at least was inconsistent with any other intent. *See Barnes v. Wood,* 750 P.2d at 1230.

Woodward concedes that at no time during its entire arrangement with Collins did it request incentive commissions pursuant to paragraph 3(b), notwithstanding its knowledge that the commissions were payable and were to be paid on the twentieth day of each month based on a daily sales report to be submitted by Woodward. Brad Woodward's relevant testimony was as follows:

Q. When you knew what [the daily sales report] was, did you ask for it?

A. Yes, at that point in time.

Q. And received it?

A. Right.

Q. And you had the report in front of you; correct?

A. Yes, for a few month period.

Q. Did you ever request commissions based on that report?

A. No, I didn't.

. . . .

Q. You were aware, were you not, that the incentive commissions, if there were any, were to be paid on the 20th day of each month; correct?

A. That's right.

. . . .

Q. And so you're telling us that you knew that you were entitled to incentive commission, yet you never requested it at any time during the time you were employed?

A. In that whole period, no.

Not only did Woodward fail to make either a written or oral request for the commissions during the time it was employed by Collins, but it concedes that its principal made a conscious decision not to request the commissions, even though he thought Woodward was entitled to them. Brad Woodward stated:

Q. Well, did you feel you were entitled to a commission under paragraph three?

A. I felt I did. I chose not to make any comment or ask for anything.

While Woodward admits that it made a conscious determination not to assert its rights under the contract, it offered the following explanation for its decision not to ask for the commissions:

A. . . . I was in a situation where I was in a new company with, you know, trying to deal with people out of Los Angeles who couldn't relate to me or me to them very well just because of not being an eye to eye type situation.

Salt Lake was in total chaos and I'd been made quite aware that the money I was being paid was more than anybody else. And I felt that asking for more money, or even, you know, even questioning the commission situation, might jeopardize my standing in the company and cause them to want to cancel my contract. So I just kind of just rolled over and played dead.

. . . .

Q. So you continued with Collins, and you are very timid, I guess, to ask for any incentive commission; is that what you're telling us, that you thought that they might fire you for asking what you were entitled to under the contract?

A. Well, my feelings were when I saw the condition of Collins Food Service, the chaos of the Salt Lake City Branch, when

I heard that their losses—they were losing money every month, a substantial amount of money, I felt ridiculous—I would jeopardize my situation if I was to say anything about it.

And at that point in time, you know, I was more than willing to settle for $45,000 a year.

Q. So during the early time, that was sufficient for you?

A. Well, during the whole time.

■ Woodward argues that it asserted its rights as strongly as it could in the context of its fear that immediate assertion of those rights would result in either termination of its employment or the increased financial instability of Collins. It claims it intended only to temporarily delay enforcement of those rights and did not really intend to waive them. However, under the doctrine of waiver, the unexpressed, subjective reasons for the relinquishment of a right are largely irrelevant. "[T]he question whether waiver will be found in any particular case depends not upon the secret intention of the party against whom it is asserted, but upon the effect which his conduct has had upon the other party." 28 Am.Jur.2d *Estoppel and Waiver* § 158 at 843 (1966). Stated another way, one cannot prevent a waiver by a private mental reservation contrary to an intent to waive, where his or her actions clearly indicate such an intent. *E.g., City Nat'l Bank v. Vanderboom*, 290 F.Supp. 592, 610 (D.Ark. 1968), *affirmed*, 422 F.2d 221 (8th Cir.), *cert. denied*, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970). Clearly, Woodward's failure to submit the requisite daily sales reports, coupled with the lack of contemporaneous objections to Collins' failure to pay them, would lead Collins to reasonably conclude that Woodward was not claiming and

had waived whatever entitlement to the commissions it may have had.[2]

Moreover, while some apprehension on the part of Woodward might arguably be justified in view of its apparent concern over the consequences of asserting its rights, *but see* Note 2, *supra*, its waiting until after it was terminated to assert its "right" went well beyond the point of a mere "delay." If Woodward's intent was to defer payment of the commissions until Collins' financial status was less insecure, it should have at least documented its belief that it was entitled to the commissions. *See, e.g., Abrams v. Horizon Corp.*, 137 Ariz. 73, 669 P.2d 51, 57 (1983) (Where salesman remained on the job without firmly demanding commissions owed to him under a sales agreement, documentation by memorandum stating he was entitled to the commissions was sufficient to show non-acquiescence in employer's failure to pay.).

## IV. CONCLUSION

We agree that Woodward, by its conduct, waived its right to incentive commissions under the sales agreement with Collins. The evidence is uncontroverted that Woodward was aware of the existence of its right to receive compensation pursuant to paragraph 3(b) and that it knew such a claim had to be documented by a daily sales report and submitted monthly. Nonetheless, Woodward decided to "roll over and play dead" as it was "more than willing to settle for $45,000 a year." It was not until after the relationship was terminated that Woodward sought what it knew it was entitled to receive during the entire course of its employment. Such conduct, notwithstanding whatever unexpressed

---

**2.** Of course, it is Collins' position that no such commissions were owed under the contract. A timely assertion by Woodward would have permitted the parties an opportunity to address the contractual ambiguity and adjust the terms to comport with their negotiations and actual understandings. As to Woodward's fear that such an inquiry would have resulted in termination of the contract, it is inconceivable that Collins, having just entered into the contract with Woodward, would have terminated the contract if Woodward had sought nothing more than its due under the contract.

subjective intent Woodward's principal had, unequivocally evinced an intent to waive its right to claim the incentive commissions.[3]

Accordingly, we affirm the trial court's decision granting Collins' motion for summary judgment.

JACKSON and GREENWOOD, JJ., concur.

---

**3.** While the trial court reached the correct result applying the doctrine of waiver, other courts have reached the same result, on similar facts, under either an estoppel or contract theory. *See, e.g., Celmer v. Schmitt,* 198 Mont. 271, 645 P.2d 946, 948 (1982) (An employee would be estopped from claiming compensation for overtime work where he failed to report it or to inform his employer that he expected compensation for it until he instituted suit after his discharge.). *Cf. Abrams v. Horizon Corp.,* 137 Ariz. 73, 669 P.2d 51, 57 (Ariz.1983) (salesman's documentation of objection to employer's failure to pay commissions precluded application of doctrine that any course of performance acquiesced in without objection is given great weight in interpretation of ambiguous agreement).