**John A. BECKSTEAD, Plaintiff and Appellee,**

v.

**DESERET ROOFING COMPANY, INCORPORATED; and Bill G. Hendricks, individually and dba Deseret Roofing Company, Incorporated, Defendants and Appellants.**

**No. 900625–CA.**

Court of Appeals of Utah.

April 28, 1992.

---

Stanford Nielson, Salt Lake City, for defendants and appellants.

John A. Beckstead, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, Associate P.J., and GREENWOOD and JACKSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Defendants Deseret Roofing Company, Incorporated and Bill G. Hendricks (Deseret Roofing)[1] appeal the trial court's judgment for breach of warranty in favor of plaintiff John A. Beckstead (Beckstead). The trial court held Deseret Roofing liable under an express warranty providing that Deseret Roofing would maintain Beckstead's roof in a watertight condition for two years. We affirm.

1. The trial court found that Deseret Roofing was dissolved as a corporation on June 1, 1990, and

## FACTS

In October 1985, Deseret Roofing replaced the roof on Beckstead's home to cure a leaking problem. When they completed the roof, Deseret Roofing gave Beckstead a written warranty, dated October 31, 1985. Under the warranty, Deseret Roofing promised to "maintain the roof in a watertight condition for a period of TWO (2) years from date of completion provided owner gives Deseret Roofing Company written notice of any leaks within 30 days from discovery of such leaks."

In the spring or summer of 1986, Beckstead's roof began leaking. Beckstead telephoned Deseret Roofing several times. Deseret Roofing promised to look at Beckstead's roof and remedy the problem but failed to do so. Finally, on August 28, 1986, Beckstead sent Deseret Roofing a letter, threatening to resort to legal process if they did not repair the roof. Deseret Roofing responded by sending a workman to repair the roof. In February 1987, the roof began leaking again. Deseret Roofing, responding to Beckstead's telephone calls, again attempted to repair the leaks but the leaks continued. On March 5, 1987, Beckstead gave Deseret Roofing written notice that the old leaks had not been remedied and that new leaks had developed. Deseret Roofing did not repair the roof and the leaking increased.

Finally, in November 1989, Deseret Roofing sent an employee to try to remedy the leaking problem. The employee told Beckstead there were two problems with the roof—there was no ice shield installed on the roof and some of the shingles were cracking. The employee referred Beckstead to defendant, Bill Hendricks, to determine what Deseret Roofing would do to remedy the problem. However, Hendricks would not return Beckstead's telephone calls.

On April 11, 1990, Beckstead sent Deseret Roofing another letter advising them he had settled with the shingle manufacturer, and asking Deseret Roofing to fix the roof for the settlement amount. Deseret Roof-

Hendricks succeeded to and took over its business, assets and liabilities.

ing did not respond and, thus, Beckstead hired another roofing contractor to remove the existing roofs, correct the drip edge, and install an ice and water shield.

Subsequently, Beckstead brought action to recover the cost of repairing the roof. Deseret Roofing argues on appeal the trial court erred in: (1) Determining Deseret Roofing breached the warranty, (2) finding Beckstead gave adequate notice to trigger the application of the warranty, (3) holding Deseret Roofing liable for the cost of work done by another contractor, and (4) allowing Beckstead, an attorney, to testify as a witness and also represent himself.

## I. BREACH OF WARRANTY

Deseret Roofing claims it had no obligations under its two-year warranty to cure problems with the roof after November 1987. Beckstead responds that the roof began leaking during the warranty period, and Deseret Roofing never cured the problems arising within the warranty period.

The warranty contract, dated October 31, 1985, states that Deseret Roofing "will maintain this roof in a watertight condition for a period of two years."

Deseret Roofing argues this case is similar to *Provo City Corp. v. Nielson Scott Co.*, 603 P.2d 803 (Utah 1979), where the subcontractor warranted trees used in a development project. *Id.* at 804. The subcontractor replaced twelve dead trees during the warranty period. *Id.* at 805. The replacement trees were found dead after the warranty expired, and there was no evidence that the trees were unhealthy or defective when planted. *Id.* The court held the subcontractor had no obligation to replace the replacement trees after the warranty had expired, and the subcontractor had fulfilled his obligations under the warranty by replacing the original twelve trees. *Id.* at 806.

In contrast, Deseret Roofing never fulfilled its obligations because it did not repair the leaking that developed during the warranty period. Beckstead testified that, although Deseret Roofing attempted to repair the leaking that began in February 1987, within the warranty period, it was unsuccessful. The leaking continued and became worse. Beckstead sent Deseret Roofing written notice of the continued leaking on March 5, 1987, and Deseret Roofing never remedied the problems. The trial court found that "additional attempts to remedy the leaking were made by Deseret but the leaking was not remedied."

This case is more akin to *Spinoso v. Rio Rancho Estates, Inc.*, 96 N.M. 5, 626 P.2d 1307 (Ct.App.), *cert. denied*, 96 N.M. 17, 627 P.2d 412 (1981). In *Spinoso*, plaintiffs sued defendant for breaching the one-year warranty in a construction contract. *Id.*, 626 P.2d at 1309. On the closing date, plaintiffs notified defendant of construction defects, and defendant unsuccessfully attempted to repair the defects. *Id.* After three years, defendant refused to make further repairs and claimed that because the warranty had expired, no further work was required under the contract. *Id.* at 1311. The court disagreed, stating:

We consider this argument specious. The agreement did not set a one-year limitation on repairs, but rather a one-year maximum period for the discovery and proper notification regarding defects. Since the defects were so discovered and [defendant] was adequately notified, the warranty was applicable. [Defendant's] failure to repair the defects constituted a breach of contract.

*Id.*

In the present case, Deseret Roofing promised to maintain Beckstead's roof in a watertight condition. The roof leaked during the warranty period. Deseret Roofing failed to repair the leaks, the roof continued to leak during the warranty period, and then the warranty expired. Therefore, we conclude, Deseret Roofing breached the warranty because the roof was not in a watertight condition as warranted by Deseret Roofing, and Deseret Roofing failed to remedy the problems.

## II. NOTICE

Next, Deseret Roofing contends it was not obligated to repair the roof because

Beckstead failed to give Deseret Roofing written notice within thirty days of discovering any leaks, as required under the contract. Beckstead responds that Deseret Roofing waived its right to strict compliance with the notice requirement.

"The question of whether a right has been waived has been characterized as one of fact ... although it is perhaps more accurate to view the ultimate conclusion whether waiver has occurred, given particular facts, as a question of law." *B.R. Woodward Mktg., Inc. v. Collins Food Serv., Inc.*, 754 P.2d 99, 101 (Utah App. 1988) (citation omitted). However, we accord great deference to the trial court's underlying factual findings leading to the decision of waiver. *Anderson v. Brinkerhoff*, 756 P.2d 95, 98 (Utah App.1988).

 Waiver is "the voluntary and intentional relinquishment of a known right." *Id.; see Rees v. Intermountain Health Care, Inc.*, 808 P.2d 1069, 1073 (Utah 1991); *B.R. Woodward*, 754 P.2d at 101. To waive a right, there must be an existing right, knowledge of its existence, and an intent to relinquish it. *Hunter v. Hunter*, 669 P.2d 430, 432 (Utah 1983); *B.R. Woodward*, 754 P.2d at 101. The intent to relinquish a right can be implied from conduct, if the party's conduct "unequivocally evince[s] an intent to waive or [is] at least ... inconsistent with any other intent." *B.R. Woodward*, 754 P.2d at 101; *see Hunter*, 669 P.2d at 432. Failure to adhere to the precise terms of the contract, combined with the absence of notice of a party's intention to insist on strict compliance, is enough evidence to support a finding of waiver. *Anderson*, 756 P.2d at 98. Furthermore, "one cannot prevent a waiver by a private mental reservation contrary to an intent to waive, where his or her actions clearly indicate such an intent." *B.R. Woodward*, 754 P.2d at 103.

For example, in *B.R. Woodward*, the court found Woodward waived its right to monthly sales commissions under an agreement by waiting over a year and a half before making its first claim. *Id.* Woodward claimed it intended only to delay enforcement of its rights, not waive them. *Id.* The court stated that Woodward could not prevent waiver by private mental reservations when its conduct indicated an intent to waive the right to commissions. *Id.* Similarly, in *Atkinson v. Orkin Exterminating Co.*, 5 Kan.App.2d 739, 625 P.2d 505, *aff'd*, 230 Kan. 277, 634 P.2d 1071 (1981), the court held the warranty requirement of written notice to the defendant was effectively waived by defendant's actions. *Id.*, 625 P.2d at 510. After receiving a telephone call from plaintiff, defendant had promised to re-treat plaintiff's home for termites. *Id.* at 509. The court found such conduct established a waiver of the requirement of written notice. *Id.* at 510.

 In the instant case, Beckstead's roof first began leaking in the spring or summer of 1986. Beckstead called Deseret Roofing several times, and Deseret Roofing promised to look at Beckstead's roof. Beckstead gave Deseret Roofing written notice on August 28, 1986, and Deseret Roofing repaired the leaks. The roof began leaking again in February 1987, and Deseret Roofing unsuccessfully attempted repairs. Beckstead gave Deseret Roofing formal written notice of the continued leaking within thirty days of the February leaks on March 5, 1987.[2] Deseret Roofing did not remedy the leaking problem.

The trial court found that although Beckstead did not give Deseret Roofing written notice within thirty days of discovering the first leaks, "there was substantial compliance with the notice requirements of the warranty, no additional damage occurred before the written notice was given, and plaintiff detrimentally relied upon the representations and conduct of Deseret in not giving written notice within the thirty day period."

 We conclude, under the totality of the circumstances, the trial court was cor-

---

**2.** Thus, Beckstead actually complied with the written notice requirement for the second series of leaks.

rect in concluding Deseret Roofing waived the written notice requirement.[3]

## III. PRO SE ATTORNEY

Finally, Deseret Roofing contends Beckstead should not have been allowed to act as a party, witness and advocate in this case because of the prohibition in Rule 3.7 of the Utah Rules of Professional Conduct (1988). Rule 3.7 prohibits a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness," with three exceptions that are inapplicable to the present case. Rule 3.7 is substantially the same as Disciplinary Rule 5–102 of the Model Code of Professional Responsibility, and, therefore, law interpreting DR 5–102 is helpful.

Courts interpreting the prohibition against acting as a lawyer and a witness in the same case have consistently concluded the rule does not apply when the lawyer is representing himself. "To apply DR 5–102 when the testifying advocate is a litigant in the action miscomprehends the thrust of the rule. DR 5–102 regulates lawyers who would serve as counsel and witness for a party litigant. It does not address that situation in which the lawyer *is* the party litigant." *Gorovitz v. Planning Bd. of Nantucket*, 394 Mass. 246, 475 N.E.2d 377, 379 (1985); *Borman v. Borman*, 378 Mass. 775, 393 N.E.2d 847, 856 (1979); *see Presnick v. Esposito*, 8 Conn.App. 364, 513 A.2d 165, 166–67 (1986); *O'Neil v. Bergan*, 452 A.2d 337, 344 (D.C.1982). Therefore, we conclude the trial court properly permit-

ted Beckstead to represent himself and testify as a witness in this case.[4]

## CONCLUSION

In summary, we hold: (1) Deseret Roofing breached its warranty by not maintaining Beckstead's roof in a watertight condition, (2) Deseret Roofing waived the warranty requirement of written notice within thirty days by its conduct, and (3) Rule 3.7's prohibition against an advocate testifying as a witness does not apply to Beckstead, an attorney representing himself. Accordingly, we affirm.

GREENWOOD and JACKSON, JJ., concur.

---

**3.** Deseret Roofing's final argument under the contract is that they are not liable for the cost of another contractor replacing the roof, due to the following language: *"Deseret Roofing Company shall not be liable for any loss resulting from* fire, gales, tornado, hurricane, lightning, accident, any failure of the structure to which the roof is attached, negligence of the owner or *modifications of the roof not made by Deseret Roofing Company."* (Emphasis added.)

Beckstead argues this provision is designed to protect Deseret Roofing from responsibility for independent, intervening causes which result in loss, not the cost of repairing leaks resulting from Deseret Roofing's work on the roof. We agree.

**4.** This conclusion is mandated by Article I, Section 11 of the Utah Constitution, which states:

All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law ... and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party. "In view of Article I, Section 11 ... of the State Constitution, no person may be barred from prosecuting or defending before any state tribunal by himself or counsel, any civil cause to which he is a party." *Nelson v. Smith*, 107 Utah 381, 154 P.2d 634, 637 (1944).