2021 UT App 35

## THE UTAH COURT OF APPEALS

BOHMAN AGGREGATES LLC, ET AL.,[1]
Appellants,
*v.*
STEVE L. GILBERT AND CRUSHER RENTAL & SALES INC.,
Appellees.

Opinion
No. 20190867-CA
Filed April 1, 2021

Second District Court, Morgan Department
The Honorable Noel S. Hyde
No. 150500016

Jerome Romero and Brent A. Bohman, Attorneys
for Appellants

Bryan J. Pattison and Dana T. Farmer, Attorneys
for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

MORTENSEN, Judge:

¶1     After hearing opening and closing statements riddled with first-person narrative and personal opinions from a pro se attorney-party-witness, the trial court found that Appellees had been deprived of a fair trial and granted a new trial. Appellants contend that by so ruling, the trial court misinterpreted the Rules of Professional Conduct and abused its discretion. Because we

---

1. The parties on appeal are not limited to those listed, but also include other parties whose names appear on the notice of appeal or who have otherwise entered appearances in this court.

agree with the trial court's rule interpretation, and where the record demonstrates obvious and consistent violations, Appellants fail to show that the trial court abused its discretion in granting a new trial. Therefore, we affirm.

BACKGROUND

¶2 Some years back, Bohman Aggregates LLC assumed control of an ongoing mining operation and, along with it, Crusher Rental & Sales, Inc.'s (Crusher) onsite mining equipment. Eventually, Crusher and Bohman Aggregates initiated negotiations about the rights to the equipment. During this negotiation period, attorney Brent Bohman (Attorney Bohman) assisted with drafting and negotiations. Attorney Bohman was the brother of Bohman Aggregates' owner and lived on the land Bohman Aggregates used for its mining operation. Allegedly, Attorney Bohman had authority to execute agreements on Bohman Aggregates' behalf. But the truth about what happened next is clear as mud. Bohman Aggregates (and Attorney Bohman as its representative) and Crusher had disparate ideas about new equipment issuance, various payments, and the proposed contracts' purpose, meaning, and scope. Despite the parties' efforts to clarify their contractual relationship, they disagreed about which documents, as potentially informed by other communications, became enforceable contracts and what those supposed contracts even meant.

¶3 The central dispute revolved around a meeting between Attorney Bohman and Steve Gilbert, Crusher's president. Attorney Bohman alleged that at that meeting he signed an agreement and wrote the words "subject to addendum" next to his signature. Attorney Bohman claimed that he "expressly told" this to Gilbert and wrote "subject to addendum" to ensure the contract's "four corners" indicated his *conditional* acceptance.

Gilbert, meanwhile, maintained that the contract itself constituted the entirety of the parties' agreement. Gilbert claimed that Attorney Bohman snuck "subject to addendum" onto the contract after he left the room. When Attorney Bohman sent an addendum, Crusher rejected it, sent its own proposed addendum, and filed a mining lien against Bohman Aggregates. Bohman Aggregates filed a claim against Crusher, seeking to invalidate the signed agreement. Crusher counterclaimed. And, in this counterclaim, Crusher sued Attorney Bohman personally as part of the joint venture.

¶4    The contract's enforceability, and Attorney Bohman's personal liability, hinged, in large part, on whether Attorney Bohman or Gilbert told the truth about their meeting. Thus, the jury's witness-credibility assessment took front and center in the case. Despite the fact that Attorney Bohman would be a critical witness, he decided to represent himself. Appellees thus expressed concerns, both in a motion and at a hearing held four weeks before trial, about Attorney Bohman abiding by Utah Rule of Professional Conduct 3.4 (rule 3.4).[2] Appellees' counsel asserted,

> My concern is Rule 3.4. As an advocate, [Attorney] Bohman simply can't help himself. . . . He gives his opinion; accuses me of things; he calls testimony false, unreputable; my client's a liar; we're acting in bad faith. He cannot help but give his opinion as an advocate. And there's no constitutional right to violate Rule 3.4.

---

2. Rule 3.4 prohibits a lawyer from asserting "personal knowledge of facts in issue except when testifying as a witness" and from stating "a personal opinion as to . . . the credibility of a witness" or "the culpability of a civil litigant." Utah R. Prof'l Conduct 3.4(e).

¶5     Attorney Bohman never directly responded to the rule 3.4 concerns (instead arguing about the extent to which his personal defense arguments could overlap with his co-defendants' arguments). Attorney Jerome Romero (Attorney Romero), who represented all Appellants except Attorney Bohman at trial, joined the discussion, stating, as co-counsel with Attorney Bohman, "We understand Rule 3.4."[3]

¶6     Although the trial court denied a motion to disqualify Attorney Bohman from representing himself, during the motion hearing it warned,

> I'm also going to make a general caution to all counsel in this case, particularly in as much as issues of credibility have become a fairly substantial focus in this matter. And that is a very severe caution against any conduct by counsel that would vouch for the credibility or suggest a lack of credibility of any witness or party in the case.
>
> Counsel may ask questions, but questions or determinations of credibility are ultimately questions for the jury. And if an attorney, in argument, argues that "This witness should be believed over some other witness" or "I believe this witness" or "I've worked with this witness for

---

3. In their reply brief, Appellants contend that Attorney Romero was actually referring to rule 3.7, which was also at issue in that conference. While that may have been Attorney Romero's intention, that is not what the record reflects. But more importantly, this distinction is irrelevant because all attorneys are under the obligation to understand and abide by all the standards contained in the Utah Rules of Professional Conduct—including rule 3.4.

years and he's credible and you should believe him because I believe him," any conduct like that will result in a mistrial. That is absolutely prohibited.

The court explained that the parties would be able to juxtapose testimony and invite the jury to consider witness credibility but reiterated that "counsel may not cross that line to express a personal opinion as to the credibility of any witness." The attorneys did not object nor seek any clarification. Again, the trial court repeated the warning: "And so it is abundantly clear, if that happens, the Court will declare a mistrial." Once more, the trial court warned that such conduct "needs to be significantly guarded against . . . [and] simply cannot occur." Finally, the trial court made clear that its instruction was "on the record, [and] if that happen[ed], the consequences [would] be as indicated."

¶7      With the scene set, by both the Utah Rules of Professional Conduct and the trial court's unequivocal statements, Attorney Bohman pursued his course of self-representation in a case where he would also serve as a critical witness. He began his opening statement boldly:

> I've been living this case for three years, and I think I have a hard time listening to it. I always used to tell my clients when I practiced law full time that I, as a lawyer, will never know the case as well as they do. And having been sued for the first time as an individual, I find that experience and statement to be true.

He continued,

> Let me be as clear as I can possibly be. At no time was I ever an owner of the mining operations being conducted at Bohman ranch. . . . [But] [m]y claim to fame is that I live on the ranch. And given that [my

brother] doesn't live there, I became [his] eyes, I became his ears, and I was asked to perform specific tasks from time to time on his behalf, which I did. As members of a family, you do things for each other.

¶8 Attorney Bohman's opening statement continued in direct, first-person narrative. He stated that during negotiations he meant to "move the ball forward in good faith" and that his "concern was that [the other party] not misconstrue what [they] were doing." Attorney Bohman recounted conversations in detail and described his thoughts and feelings about them with phrases like, "to my shock and horror," and, "I must have looked like a deer caught in the headlights."

¶9 Attorney Bohman also described his impression of the negotiations by saying, "[I]t was at that point in time that I realized I was probably dealing with an absolute crook." Attorney Bohman was referring to Gilbert, the only other individual in the room during the crucial events—naturally, a pivotal witness in the case. Speaking of Gilbert, Attorney Bohman declared, "Either this man doesn't understand his own contract or he thinks I'm an idiot and that I'm going to rely on a prior writing that would be wiped out." Attorney Bohman pressed forward comparing his and Gilbert's versions of events and providing legal analysis of Gilbert's position. After all the foregoing, opposing counsel finally objected, and the trial court sustained the objection before opposing counsel even stated grounds.

¶10 But Attorney Bohman was undeterred, asserting that Gilbert started "to fabricate a false narrative" and that "what he's done through this period as he [weaves] his false narrative is he started to—" Opposing counsel again objected, and the trial court immediately sustained. After the trial court ruled on the

objection, opposing counsel clarified the objection's basis—that Attorney Bohman had given "argument and opinion."

¶11    During an ensuing sidebar conference, the trial court reiterated the instructions from the pretrial conference:

> Expressions of your opinion, [Attorney] Bohman, about the truth or falsity of statements made by another party or another witness are not appropriate. I've already made that very clear in my instructions previously, and I will not permit that kind of conduct.
>
> If you want to state what you believe the facts are, that's fine. If you want to state what you believe the other party may allege the facts to be, that's fine. But you may not characterize as "false" or "fabricated" or other adjectives of that nature a characterization of the opponent's testimony. You can articulate the facts, but you may not express your opinion as to the credibility or believability of any other witness or the facts that are going to be presented by those witnesses. Those issues are exclusively within the purview of the jury, and I will not permit that conduct.

Attorney Bohman's opening statement ended shortly thereafter.

¶12    Attorney Bohman's closing argument was much the same. He began by referencing his testimony on the stand but then he launched into another direct, first-person narrative about witness credibility. Attorney Bohman stated that "[A]t all times [he] operated in good faith" and opined that, on the other hand, Gilbert "was really trying to wipe out all the prior promises." Attorney Bohman said, "I assumed he was acting in good faith, as I was acting in good faith," which "consists of . . . notions of

honesty, truthfulness, genuineness, and a lack of deceit." He stated, "I wrote on the contract three words 'subject to addendum.' It wasn't Tweety Bird that wrote those, it wasn't Casper the ghost, it was me. This is my handwriting" and Gilbert "was 4 feet away from me when I did it."

¶13    Recounting part of Gilbert's testimony, Attorney Bohman said, "There's no reason, as he's testified to you, I would say 'Oh, I've got to make a note to remember to write the addendum.'" He continued, "It's just a transparent lie. He wanted to wipe out his prior promises, and he believed that if those words weren't initialed, then they didn't mean anything. He was wrong. And just in case he wasn't wrong or was wrong, he decided to make up a lie to create—"

¶14    Opposing counsel objected at that moment. The trial court sustained the objection, and in yet another sidebar stated,

> The rules of ethics prohibit any expression of opinion on the credibility of any witness. And that conduct is absolutely prohibited. You've been warned about that before, and the Court will not countenance that conduct. Those—those direct statements are in direct contradiction of the order of the Court. . . .
>
> [T]he rules of ethics also prohibit expressing testimony during argument, and you've been doing that as well. And that's inappropriate. You can make comments on the evidence, but you may not testify during your closing. . . .
>
> You may not express as facts what will be the equivalent of your testimony, and you may express no opinion about the credibility of any other participant in the proceedings . . . . And if any of

those restrictions are violated, you'll be barred from making any further comments at all.

¶15 When Attorney Bohman asked if he could argue what his testimony was, the trial court clarified,

> You can say that your testimony was X, Y, Z but you cannot testify from the podium. You cannot say, "I was there." You cannot say, "I did this." You cannot say, "I did that." You can say, "The testimony shows this" or "The testimony shows that." . . . And you may not present anything which would be in the nature of testimony, and you may not make any comment that attributes credibility or lack of credibility to any other party or witness.

The trial court made the consequences clear: "[A]ny violation of those restraints will result in your being barred from any further comment in the proceedings." The trial court then clarified for the jury those statements that "are in the nature of or appear to be testimony are not testimony, they are not evidence in these proceedings, and are to be disregarded by the jury."

¶16 Once the sidebar concluded, Attorney Bohman then stated to the jury, "Getting back to the concept of good faith, the mistake I made in my dealings, I think the evidence shows, is that I treated . . . Gilbert as if he was an honest businessman." When opposing counsel objected, the trial court immediately sustained the objection and terminated Attorney Bohman's closing statement. All told, opposing counsel objected four times throughout Attorney Bohman's opening and closing statements.

¶17 Following a jury verdict in Appellant's favor, Appellees moved for a new trial under Utah Rule of Civil Procedure 59(a)(1). In the motion, Appellees alleged, "From his opening to his closing, [Attorney] Bohman serially and intentionally

violated rule 3.4(e). Nearly his entire opening statement was improper testimony. That opening included improper opinion and commentary." (Cleaned up.) Appellees further alleged that "Attorney Bohman went off again in his closing, the entirety of which was improper opinion and testimony." The motion based its request on allegations of improper testimony and improper opinion.

¶18    On those same grounds, the trial court granted a new trial and vacated the judgment:

> [Attorney] Bohman in connection with both his opening and closing statements was consistently and egregiously in violation of Rule 3.4(e). [Attorney] Bohman's opening statement, for example begins as a statement of his personal knowledge and his personal experiences. There is very little reference or suggestion at all as to what the evidence will show in the case; rather there is simply a direct presentation by [Attorney] Bohman of his own personal expressions of his personal knowledge relative to the case. The reason that that conduct is proscribed by the rules is that it is expressly inappropriate for an attorney to suggest that he has personal knowledge that goes beyond what the jury may understand or hear. When an attorney does that, he compromises his role as an attorney and crosses the line to the inappropriate presentation of evidence. That line was crossed repeatedly and consistently by [Attorney] Bohman throughout his conduct when appearing as an attorney in this case.
>
> Not only were there inclusions of statements as though from personal knowledge, but there were statements as to the credibility of the witnesses

> setting forth in anticipatory strike against the credibility specifically of . . . Steve Gilbert. That is inappropriate. The Court finds that [Attorney] Bohman's opening statement was essentially and almost in its entirety in violation of rule 3.4(e).
>
> The Court also finds that the closing statement was subject to the same problems as the opening. Rather than being an argument suggesting a legal principle and making reference to a particular piece of evidence or material that had been presented appropriately as evidence, [Attorney] Bohman again engaged in simply a first person narrative of the facts of the case suggesting his personal knowledge.

The trial court then referenced its pretrial warning "that it would consider a mistrial request if those rules were violated." It also said that because "[t]he Rule 3.4(e) issue was known by all the parties" before trial, Appellees had not waived their opportunity to request a new trial on these issues. The Appellees' choice, the trial court noted, "to desist from repeated objections" was "strategically understandable."

¶19 The trial court also took issue with Attorney Bohman's "physical appearance," "demeanor," "substantial emotion," and "variations in volume," as well as the "tone of his comments," noting that these were "less than professional and detached" and characterizing them as "demeaning," "forceful," "dismissive of the arguments of others," and "suggesting a superiority of his knowledge." In short, the court ruled that "[Attorney] Bohman's physical presence, when combined with his statements, communicated . . . to the jury, in effect, 'you don't have to listen to them because I was there and I know the truth.'" And, "that essence, both by his physical presence, the tone, and nature of

his presentation, and the substance of its content directly violates the requirements of Rule 3.4(e)."

¶20    Based on the totality of the circumstances, the trial court found that "the fairness of [the] trial ha[d] reasonably been called into question." And further, the trial court found "that it [wa]s reasonably likely that a different result would have occurred had those irregularities and improper conduct not taken place." The trial court also discussed "a statement made by [Attorney] Bohman's co-counsel, [Attorney] Romero, during his own closing statement, wherein [Attorney] Romero suggested that [Attorney] Bohman's correction of testimony with respect to the particular timing of an issue was based upon issues of 'honesty'—that 'that's what an honest person does.'" The trial court ruled that the statement constituted "improper vouching for the credibility of a witness" and considered that statement in light of the trial's "greater context."

¶21    The trial court granted a new trial and vacated the jury's verdict. Appellants now bring the instant interlocutory appeal.

ISSUE AND STANDARD OF REVIEW

¶22    When a trial court grants a new trial, "we will not reverse absent a clear abuse of discretion by the trial court," but "we review the legal standards applied . . . for correctness," recognizing that "a trial court abuses its discretion if its decision is premised on flawed legal conclusions." *State v. Boyer*, 2020 UT App 23, ¶ 18, 460 P.3d 569 (cleaned up); *see also Goddard v. Hickman*, 685 P.2d 530, 532 (Utah 1984) ("A trial court has broad latitude in granting or denying a motion for a new trial, and will not be overturned on appeal absent a clear abuse of discretion.").

ANALYSIS

¶23    Appellants contend that the trial court misinterpreted rule 3.4 and abused its discretion when applying that misinterpretation to grant a new trial. To support this contention, Appellants assert that rule 3.4 does not apply to Attorney Bohman but that even if it did, he did not violate the rule. We discuss rule 3.4's relevant aspects in turn and then review rule 59 of the Utah Rules of Civil Procedure.

I. Rule 3.4

¶24    The trial court granted a new trial based on Attorney Bohman's numerous and blatant rule 3.4 violations. *See* Utah R. Civ. P. 59(a)(1) (allowing a trial court to grant a new trial for an "irregularity in the proceedings of the court."). But Attorney Bohman contends that the trial court abused its discretion because, in part, rule 3.4 did not apply to him as a pro se attorney–litigant. Accordingly, we first review the trial court's interpretation that rule 3.4 applies to pro se attorney–litigants, ultimately concluding that it does.

¶25    "We interpret a court rule in accordance with its plain meaning, and our objective in interpreting a court rule is to give effect to the intent of the body that promulgated it." *In re Discipline of Brussow*, 2012 UT 53, ¶ 14, 286 P.3d 1246 (cleaned up); *see also In re Discipline of Dahlquist*, 2019 UT 15, ¶ 21, 443 P.3d 1205. While we understand the Utah Supreme Court's admonition that "no set of rules or guidelines can exhaust the moral and ethical considerations that should inform a lawyer [as to duty]," *Burke v. Lewis*, 2005 UT 44, ¶ 29, 122 P.3d 533 (cleaned up), when interpreting these rules, we are "bound by the text of the rule," *Strand v. Nupetco Assocs.*, 2017 UT App 55, ¶ 4, 397 P.3d 724. "[W]e look to the express language of the rule . . . [and] read each term in the rule according to its ordinary and accepted meaning." *See Drew v. Lee*, 2011 UT 15, ¶ 16, 250 P.3d 48 (cleaned

up). "Further, we interpret the rule to give meaning to all its parts, avoid construing the rule in a way that renders any portion of it superfluous, and interpret the rule so as to maintain its harmony with other court rules related to it." *State v. Rothlisberger*, 2006 UT 49, ¶ 21, 147 P.3d 1176.

¶26 Rule 3.4 governs fairness to opposing parties and counsel and provides, "A lawyer shall not . . . in trial, . . . assert personal knowledge of facts in issue *except when testifyin*g as a witness, or state a personal opinion as to . . . the credibility of a witness." Utah R. Prof'l Conduct 3.4(e) (emphasis added). The rule provides no exception for attorneys appearing pro se. Indeed, the rules otherwise make clear that "[e]very lawyer is responsible to observe the law and the Rules of Professional Conduct." *Id.* at Preamble: A Lawyer's Responsibilities; *see also State v. Jones*, 558 S.E.2d 97, 104 (N.C. 2002) ("[A]ttorneys appearing before our courts are expected, *at a minimum*, to conduct themselves in accordance with such rules. . . . [T]rial judges have a . . . responsibility . . . to take appropriate action against opportunists who purposely venture to violate courtroom protocol.").

¶27 Though no Utah caselaw addresses the subject directly, other courts agree with our interpretation that the rules of professional conduct and the associated "professional responsibilities govern the conduct of attorneys whether they represent themselves or others." *See Brunswick v. Inland Wetlands Comm'n*, 610 A.2d 1260, 1266–67 (Conn. 1992). For one thing, this interpretation flows logically from the fact that "a pro se lawyer/litigant does represent a client when representing himself or herself in a matter." *See Runsvold v. Idaho State Bar*, 925 P.2d 1118, 1120 (Idaho 1996) (cleaned up). And specifically, the Connecticut Supreme Court has interpreted that state's substantively identical rule 3.4 and come to the same conclusion:

> Rule 3.4 . . . contains no contextual suggestion that it is applicable to an attorney only when the attorney is representing a client and not when he or she is acting pro se. Although some of our attorney disciplinary rules apply only when a lawyer is acting in a representative capacity . . . there is no indication, either in the language of rule 3.4 or in the relevant commentary to the rule, that the rule's prohibitions are inapplicable when the attorney is acting pro se rather than representing a client.
>
> . . . [T]he commentary to rule 3.4 states, the rule is designed to promote "fair competition in the adversary system by securing prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." Because the conduct proscribed by rule 3.4 is incompatible with the principle of fair competition that forms the basis of our adversary system of justice, an attorney who acts in contravention of the rule cannot justify that conduct on the basis that it was intended to benefit himself or herself rather than a client.

*Somers v. Statewide Grievance Comm.*, 715 A.2d 712, 718 (Conn. 1998) (cleaned up).

¶28    Accordingly, we hold that rule 3.4's relevant portions plainly prohibit all attorneys, pro se or not, from (1) "assert[ing] personal knowledge of facts in issue except when testifying as a witness," and (2) "stat[ing] a personal opinion" about any witness's credibility. *See* Utah R. Prof'l Conduct 3.4(e). We discuss each prohibition in turn to determine whether Attorney

Bohman's actions violated rule 3.4 and finally evaluate whether those violations warranted a new trial.

*Asserting Personal Factual Knowledge*

¶29   In interpreting rule 3.4, the trial court determined that Attorney Bohman violated the rule by asserting personal knowledge. But Appellants argue that interpreting rule 3.4 as prohibiting pro se attorneys from asserting personal knowledge of the facts fails to fulfill rule 3.4's purposes and, thus, the rule should not apply to Attorney Bohman.[4] We disagree. We reject Appellants unduly narrow rule 3.4 interpretation and conclude that interpreting the rule to apply to pro se attorney–litigants actually supports the rule's purpose. *See supra* ¶ 27.

¶30   The prohibition against attorneys asserting personal knowledge of the facts carries one exception. As pointed out, rule 3.4's express language provides that a lawyer shall not in trial "assert personal knowledge of facts in issue *except when testifying as a witness.*" Utah R. Prof'l Conduct 3.4(e) (emphasis added). Obviously, if a pro se attorney is testifying as a witness, the pro se attorney may—indeed must—assert personal knowledge of the facts, as all witnesses must testify on the basis of their personal knowledge. Inversely, however, if an attorney, pro se or not, is not testifying as a witness, the attorney must not

---

4. Appellants also argue that the trial court's rule 3.4 interpretation raises constitutional concerns. However, this court cannot identify anywhere in the record where Appellants argued before the trial court that the state or federal constitutions constrained rule 3.4's interpretation. Appellants raised no applicable constitutional argument below so they cannot raise it now. *See State v. Brown*, 856 P.2d 358, 359 (Utah Ct. App. 1993) ("[C]ourts will not consider an issue, including a constitutional argument, raised for the first time on appeal . . . .").

assert personal knowledge of the facts. Thus, the rule's plain language supports applying it to pro se attorney–litigants: the absence of any reference to pro se attorneys dictates that the rule applies to all attorneys regardless of pro se status, and because the rule includes a provision allowing attorneys to suggest personal knowledge when testifying under oath on the stand, the rule precludes all other exceptions. Unless testifying as a witness, an attorney may not assert personal knowledge—not during opening statement, not while examining witnesses, and not during closing argument.[5]

¶31 Rather than follow the rule's plain language, Appellants request that we adopt an interpretation from a case looking at an entirely different rule—Utah Rule of Professional Conduct 3.7, which generally prohibits attorneys from also acting as witnesses. Specifically, Appellants rely on *Beckstead v. Deseret Roofing Co.*, 831 P.2d 130 (Utah Ct. App. 1992), which explained that "[rule 3.7's] prohibition against acting as a lawyer and a witness in the same case . . . does not apply when the lawyer is representing [her or] himself," partially because the rule "does not address that situation in which the lawyer *is* the party litigant." *Id.* at 134 (cleaned up).

¶32 In contrast, rule 3.4 already accounts for the fact that some attorneys may also be witnesses in their own cases. Rule 3.4's prohibition against suggesting personal knowledge applies only when that party is not "testifying as a witness." Accordingly, a pro se attorney–litigant may suggest personal knowledge when under oath on the witness stand, when that attorney, like any other witness, is subject to cross-examination by the opposition.

---

5. This interpretation also comports with the Utah Rules of Evidence, which strictly govern evidence admission, including witness testimony and statements made off the witness stand. *See, e.g.*, Utah R. Evid. 601–617, 801–807.

But a pro se attorney may not assert personal knowledge while previewing a case in opening statements, while questioning another witness directly or on cross-examination,[6] or during closing arguments, where opposing parties have no opportunity to scrutinize that testimony before the jury. Any other interpretation would allow "a form of unsworn, unchecked testimony which tends to exploit the influence of the [attorney's role] and undermine the objective detachment that should separate a lawyer from the cause being argued." *State v. Thompson*, 2014 UT App 14, ¶ 51, 318 P.3d 1221 (cleaned up). In this sense, the exception—which allows pro se attorneys to testify on their own behalf while on the stand—actually reinforces the rule that a pro se attorney may not assert personal knowledge at any other time because the rule has already built in an escape-hatch for those pro se attorneys who, to testify, must of necessity assert personal knowledge.

¶33    In the present case, the trial court found that Attorney Bohman consistently and egregiously violated rule 3.4 during his opening and closing statements. And, as a result, the court characterized his message to the jury as essentially stating, "[Y]ou don't have to listen to [Appellees] because I was there and I know the truth." And we do not conclude that the trial court clearly erred in finding that Attorney Bohman egregiously violated rule 3.4 on numerous occasions. As one example, during closing, Attorney Bohman stated, "I at all times operated in good faith." We have searched the trial transcript and failed to find any remotely similar phrase in Attorney Bohman's actual testimony. We fail either because the phrase, or something like

---

6. For an example of this, see *Holt v. Commonwealth*, 219 S.W.3d 731 (Ky. 2007), where the prosecutor repeatedly asked leading questions that implied to the jury that the witness had already told the prosecutor that the defendant was guilty. *Id.* at 733–34.

it, does not exist or because he did not supply it to us. Either scenario is problematic. In the event he failed to provide it, we are unable to consider this as potentially justifying his words. *Cf. Horton v. Gem State Mutual of Utah*, 794 P.2d 847, 849 (Utah Ct. App. 1990) ("Absent the trial transcript, appellant's claim of error is merely an unsupported, unilateral allegation which we cannot resolve." (cleaned up)). But if he did not testify to that effect on the witness stand, this example illustrates the problem. Although we do not require a pro se party to recite a specific talismanic incantation when previewing or referring back to testimony during opening and closing statements, presenting something new or different that was not elicited on the witness stand becomes improper testimony not subject to oath or cross-examination. *See Thompson*, 2014 UT App 14, ¶ 51.

¶34 We appreciate the burden placed on individuals who must keep their roles of witness and attorney distinct. But Attorney Bohman's direct, first-person narrative, devoid of any indication that he was merely referencing sworn testimony, provided a sound basis for the trial court to find that Attorney Bohman violated rule 3.4's prohibition against asserting personal knowledge. Accordingly, the trial court correctly interpreted rule 3.4. Having reviewed the record, we see no basis to conclude that the trial court clearly erred in finding that Attorney Bohman violated rule 3.4; nor do we conclude that the trial court abused its discretion in deciding that these irregularities justified a new trial under Utah Rule of Civil Procedure 59.

*Credibility Comments*

¶35 The trial court also found that Attorney Bohman violated rule 3.4 by offering his personal opinion on witness credibility. Attorney Bohman contends that the trial court abused its discretion in that ruling because his statements did not actually violate the rule. We disagree.

¶36    Rule 3.4 prohibits attorneys from offering "personal opinion" about "the credibility of a witness." Utah R. Prof'l Conduct 3.4(e). Generally, no witness may comment on the credibility of another witness. *See* Utah R. Evid. 608(a); *Blackhawk Townhouses Owners Ass'n v. J.S.*, 2018 UT App 56, ¶¶ 47–50, 420 P.3d 128 ("Asking a witness to comment on the veracity of another witness is improper." (cleaned up)); *State v. Perea*, 2013 UT 68, ¶¶ 37–39, 322 P.3d 624. Specifically, one witness may not testify about another witness's veracity on a particular occasion.[7] *State v. Harmon*, 956 P.2d 262, 271 (Utah 1998) ("[O]ne witness may not testify as to the credibility of statements made by another person on a particular occasion."); *State v. King*, 2010 UT App 396, ¶ 44, 248 P.3d 984. The pro se status of an attorney–litigant provides no license to depart from, or to hedge, this general rule.[8] Although attorneys may argue that a jury should question a witness's veracity "if it is a conclusion that the jury could have reasonably inferred from the evidence[,] . . . such comments are improper when the jury could reasonably believe that the [attorney] was indicating a personal belief in the witness's credibility." *State v. Thompson*, 2014 UT App 14, ¶ 52, 318 P.3d 1221 (cleaned up). So, the question is whether Attorney Bohman's words actually constituted impermissible personal opinion.

¶37    Appellants argue that Attorney Bohman's comments were not expressions of personal opinion but deductions based on the

---

7. Indeed, even the trial judge is precluded from commenting on "the credibility of a witness's testimony." *See State v Taylor*, 2005 UT 40, ¶ 22, 16 P.3d 360.

8. Despite significant effort, we have been unable to identify a single case discussing whether a pro se attorney–litigant may comment on credibility.

evidence. Appellants rely on multiple cases in which courts have reviewed similar contested statements in context and characterized the comments as permissible statements about the evidence presented, in that the statements simply highlighted a reasonable inference that the jury could draw from the evidence presented. *See, e.g., State v. Bakalov*, 1999 UT 45, ¶ 57 n.9, 979 P.2d 799 (agreeing with the trial court that rather than providing a personal opinion, the prosecutor merely argued the evidence and that it was so compelling that the jury could come to a particular conclusion); *State v. Clark*, 2014 UT App 56, ¶¶ 36–39, 322 P.3d 761 (holding that, despite "suggesting that [a defendant] had a motive to lie and that [the defendant's] explanations were a 'fabrication,' an 'absurdity,' 'convoluted,' and 'tortured,' the prosecutor disclosed only what the jury could have reasonably inferred from the evidence" (cleaned up)); *State v. Cummins*, 839 P.2d 848, 852–54 (Utah Ct. App. 1992) (holding that "the prosecution's statements were no more than reasonable inferences based upon the demeanor of the witness and the fact that, before testifying, the witness was required to take an oath of honesty").

¶38    We of course agree that attorneys may make permissible statements based on the evidence, but they may not simply voice a personal opinion that is untethered from the evidence. Thus, the fact that a deduction might flow from the opinion, or that the evidence may support a similar deduction, is not the point. *See, e.g., State v. Spencer*, 49 P. 302, 305 (Utah 1897) (determining that a prosecutor's statement, "I have been convinced of his guilt" was improper); *State v. Ringstad*, 2018 UT App 66, ¶¶ 65–66, 424 P.3d 1052 (concluding that a prosecutor's statement that "I think that's despicable" constituted a personal opinion); *see also Harne v. Deadmond*, 1998 MT 22, ¶ 9, 954 P.2d 732 (holding that counsel's sharing a personal experience he had with the defendant, and in essence "testifying" to his character, was improper). Here, the trial court determined that Attorney

Bohman's statements constituted improper personal opinions. We agree. Again, we need not define particular magic words that designate a statement as a permissible deduction from the evidence as opposed to an impermissible opinion that is untethered from the evidence, but here, no linguistic cues suggest these statements composed deductive reasoning.[9]

¶39 During Attorney Bohman's opening statement, while sharing his narrative, he said, "It was at this point in time I realized I was probably dealing with an absolute crook." Phrases like "I realized," "I was probably," and "absolute crook" all indicate to us that Attorney Bohman propounded his personal opinion. Indeed, absent some objective way for the jury to define an "absolute crook," characterizing another witness as such is nothing but an opinion.

¶40 In closing, Attorney Bohman stated, "[T]he mistake I made in my dealings, I think the evidence shows, is that I treated . . . Gilbert as if he was an honest businessman." Here, phrases like, "mistake I made," "I think the evidence shows," and "as if," all indicate that Attorney Bohman shared a personal opinion. While the words, "the evidence shows," present no problem, we can think of no clearer words than "I think" to indicate that the speaker shared an opinion. Such words necessitate that whatever follows is the attorney's own personal opinion and not merely a deduction supported by the evidence. The trial court

---

9. Appellants also assert that Attorney Bohman's statements were not improper and that his stylistic choices in his opening and closing statements—namely the direct, first-person narrative style—constituted, at most, technical violations of rule 3.4. However, as explained, Attorney Bohman's behavior violated rule 3.4, and language matters when a party is attempting to comply with rule 3.4(e)—particularly when acting in tandem roles as attorney and party.

saw it no differently. When Appellees objected to this statement, it sustained the objection and, making good on its sidebar warning, terminated Attorney Bohman's closing argument. *See supra* ¶ 16.

¶41　We need not rehash the other examples from trial. In the trial court's order granting a new trial, the court recounted that Attorney Bohman made "statements as to the credibility of the witnesses setting forth in anticipatory strike against the credibility specifically of . . . Steve Gilbert." We see no basis to second-guess the trial court's determination that Attorney Bohman violated rule 3.4's prohibition against commenting and opining on witness credibility. Partly on this basis, the court granted a new trial because "the fairness of [the] trial had reasonably [been] called into question" and because "it is reasonably likely that a different result would have occurred had those irregularities and improper conduct not taken place." *See generally* Utah R. Civ. P. 59. Accordingly, we hold that the trial court did not abuse its discretion in relying on these grounds in granting a new trial under rule 59.[10]

---

10. Appellants also contend that the trial court erred in ruling that Attorney Romero vouched for Attorney Bohman and thereby violated rule 3.4. Although rule 3.4 does prohibit attorneys from expressing personal opinions regarding witness credibility, *see* Utah R. Prof'l Conduct 3.4(e), we believe the trial court misperceived Attorney Romero's statement. Attorney Romero's full statement reads, "[W]hen you find out that you were wrong, you correct the record. That's what an honest person does, and that's exactly what Brent does." The trial court concluded that this statement constituted inappropriate vouching. We disagree. In context, Attorney Romero's statement is devoid of the problematic features attendant to Attorney Bohman's statements; we view this statement in context as a

(continued…)

## II. Utah Rule of Civil Procedure 59

¶42    Utah Rule of Civil Procedure 59 section (a)(1) allows the court to grant a new trial based on an "irregularity in the proceedings of the court, jury or opposing party, or any order of the court or abuse of discretion by which a party was prevented from having a fair trial." Utah R. Civ. P. 59(a)(1). Rule 59(d) provides that "the court, on its own, may order a new trial for any reason that would justify a new trial on motion of a party" and that "the court may grant a timely motion for a new trial for a reason not stated in the motion." *Id.* R. 59(d). This rule therefore explicitly allows the court to grant a new trial sua sponte, or for reasons other than those raised in the motions—as long as it provides the reasons. *See id.* And importantly, nothing prevents a court from viewing a violation of the Rules of Professional Conduct as the basis for an irregularity in the proceedings warranting a new trial under rule 59.

¶43    In addition to arguing that the trial court misinterpreted rule 3.4 in finding that violations of that rule presented an irregularity justifying a new trial, Appellants also contend that Attorney Bohman's statements could not have been prejudicial because other evidence on the record would have been more damaging and because the jury was necessarily aware that Attorney Bohman, as a party, had personal factual knowledge.

---

(…continued)

deductive statement or "a conclusion that the jury could have reasonably inferred from the evidence." *See State v. Thompson*, 2014 UT App 14, ¶ 52, 318 P.3d 1221 (cleaned up). However, because Attorney Romero's statement does not appear to be the straw that broke the camel's back in justifying a new trial, we do not believe the trial court's misstep on this issue affected the outcome. The trial court justifiably granted a new trial under rule 59 based on the other irregularities it identified in its ruling.

¶44   However, we conclude that the trial court appropriately considered the case's circumstances "as a whole." *See State v. Troy*, 688 P.2d 483, 486 (Utah 1984); *see also State v. Lomu*, 2014 UT App 42, ¶ 22, 321 P.3d 235. Based on the totality of the circumstances, the court granted a new trial because the trial's fairness "ha[d] reasonably been called into question" by the rule 3.4 violations that the court "specifically observe[d] during the trial," making it "reasonably likely that a different result would have occurred had those irregularities and improper conduct not taken place." As explained, we conclude the trial court correctly interpreted rule 3.4 and correctly found that Attorney Bohman violated this rule. We also have no doubt that Attorney Bohman's consistent, egregious violations not only called into question, but in fact impacted, the trial's outcome. But even if we had such doubts, where we have "no way of knowing precisely what effect [Attorney Bohman's] remarks [or involvement with the case] had on the jury . . . , we must give great deference to the trial court, which is in a much better position than this court to evaluate the parties' conduct, the context in which the irregularity occurred, and the jury's reaction to the statement." *See Child v. Gonda*, 972 P.2d 425, 430 (Utah 1998) (cleaned up). Accordingly, the trial court properly exercised its discretion to grant a new trial here.[11]

---

11. Although the trial court instructed the jury that Attorney Bohman's remarks were not evidence, "curative instructions are not always sufficient to avoid the potential prejudice," and we will not disturb the trial court's estimation about whether its curative instructions sufficed. *See State v. Wetzel*, 868 P.2d 64, 69 (Utah 1993); *see also State v. Bujnowski*, 532 A.2d 1385, 1388 (N.H. 1987) ("[S]uch intentional, repetitive misconduct may well have rendered the court's curative instructions meaningless.").

CONCLUSION

¶45　The trial court properly interpreted rule 3.4, and did not exceed its discretion in granting a new trial based on the impact of Attorney Bohman's many rule 3.4 violations.

¶46　Affirmed.

————